EDGAR J. OUILLETTE *vs.* OVERMAN WHEEL COMPANY.

Hampden.     September 25, 1894. — October 20, 1894.

Present: ALLEN, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Instructions — Burden of Proof — Presumption — Negligence — Due Care — Expert — Question as to Admissibility of Interrogatory rendered Immaterial.*

If the instructions given to the jury by the presiding justice cover the rulings asked for by the defendant, and state the law correctly, the defendant has no ground of exception.

In an action for personal injuries occasioned to the plaintiff while in the defendant's employ by the falling on him of shafting and pulleys fastened to beams overhead in the defendant's factory, the judge refused to instruct the jury, as requested by the defendant, that "No burden rests on the defendant to show or explain the cause of the accident," and instructed them that the burden was on the plaintiff throughout; that under some circumstances the plaintiff's injury, especially where the means of explanation were more likely to be within the control of the defendant than of the plaintiff, was itself evidence of negligence ; that the breaking of the machinery in connection with a failure of one who pre-

sumably can explain to give explanation might be evidence of want of care in providing it, but this principle had no application to the case; and that the injury, though caused by the breaking of the machinery, was not in itself evidence that the defendant was wanting in due care to provide a reasonably safe place for the plaintiff to work in. The defendant further asked the judge to instruct the jury, " The measure of the defendant's duty was to exercise due care in providing instrumentalities for the plaintiff to use, and in providing a safe place in which the plaintiff was to work, and *prima facie* it is presumed to have done so." The judge gave the first portion, including the word " work," but declined to give the rest, and instructed them : " Negligence on the part of the defendant must be proved. It cannot be presumed. It is so far a presumption that the defendant discharged its whole duty, that, until it is proved otherwise, it is to be taken that it did so." *Held*, that the defendant had no ground of exception.

In an action for personal injuries occasioned to the plaintiff while in the defendant's employ by the falling on him of shafting and pulleys fastened to beams overhead in the defendant's factory, one of the issues was whether the defendant had properly inspected the shaft, and he introduced testimony to show that he had done so before the shaft was started, and from day to day while it was running, the witnesses testifying that the shaft ran without vibration, and that standing on the floor they could see if it or the pulleys oscillated an eighth of an inch. The defendant then called an expert, and asked him, " Can you state whether or not an experienced person, looking at a shaft revolving, and pulleys upon that shaft revolving two hundred and fifty revolutions a minute, whether a person can see whether it ran true or not ? " and also, " Whether a person standing upon the floor, an experienced person standing upon the floor and watching this, can see any oscillation ? " ˙Both questions were excluded. *Held*, that even if it did not appear what the answer to the last question would be, it ˙was to be inferred that it would be to the effect that any oscillation could have been seen by an experienced person in that position ; and, assuming that the first question was objectionable in form, the last should have been admitted, as the subject was not one within the common experience of men.

Where a new trial was granted on account of the exclusion of an interrogatory to an expert, the court said that it was not necessary to consider whether an interrogatory to another expert, which had also been excluded, was admissible at the stage of the examination at which it was put, even if it would have been admissible earlier, upon which it expressed no opinion, and that at the new trial it might become immaterial, or might arise under different circumstances.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ in its factory by the falling upon him of shafting and pulleys fastened to beams overhead by two hangers.

The declaration, which was at common law, alleged that the defendant negligently failed to furnish the plaintiff with a reasonably safe and suitable place in which to work, with reasonably safe and suitable instrumentalities with which to work, and to give him proper instructions and warnings regarding the dangers attending the work, all of which it was his duty

to do; and by reason thereof the plaintiff while in the line of his employment and in the exercise of due care was injured.

At the trial in the Superior Court, before *Mason*, C. J., there was evidence tending to show that the plaintiff's duty called him to occupy a certain place in a room assigned to him by his foreman, but not to use any of the machinery, and that he did not use any of it; that over the place where the plaintiff was working a steel shaft two and fifteen sixteenths inches in diameter was placed, supported by cast iron hangers fixed to the timbers overhead, the shaft being about eleven feet above the floor where the plaintiff was; that upon this shaft were two iron pulleys, one fifty and the other thirty inches in diameter; and that one of these pulleys was driven by a belt leading from a pulley on the main shaft, and the other supplied power by means of a belt to run a fan.

The plaintiff did not testify as to the causes which led to his injury, except so far as to state the place where he was at work, and his assignment there by the foreman. The plaintiff contended, and introduced evidence tending to show, that the shaft and the machinery connected therewith, and its method of attachment to the timbers of the floor above, were improper, insufficient, and insecure, and that the defendant ought to have known that they were not sufficient and safe.

The defendant produced witnesses who testified that there was a latent defect or flaw in the shaft which could not be discovered on an ordinary inspection, but the plaintiff's witnesses testified that there was no such flaw. It became the subject of material inquiry whether the defendant had exercised proper inspection at the time that the shaft and other machinery referred to were put up, and during the time that they were running before the injury. The defendant called witnesses who testified to their inspection of this machinery, both before it was started and while it was running, and they described their method of inspection at the time when the shafting was put up, and their observation by eye of the same from the floor of the room from day to day where the plaintiff worked, and directly under the machinery. They further testified that the machinery was adjusted properly, and ran so far as their observation went without the least vibration or oscillation, and that they could,

standing below the shaft, see if the shaft or the pulleys oscillated one eighth of an inch.

One J. W. Cumnock was called by the defendant as a witness to testify as to the character, sufficiency, and safety of the machinery in question. He was a person of long and extensive experience in dealing with machinery of that character, was admitted to be an expert, and had never seen the shafting, pulleys, and mechanism until the same were produced at the trial; and there was no evidence that he had ever been into or seen the room in which they were placed. After he had fully described the machinery in question as it appeared in court, and had testified as to its character and sufficiency and as to the strength and fitness of the materials used, and that there was no defect in the shaft, hangers, or other machinery connected therewith which could be detected upon an ordinary inspection, but that the break was caused by a latent defect or flaw in the shaft, he was asked: " Can you state whether or not an experienced person looking at a shaft revolving and pulleys upon that shaft revolving two hundred and fifty revolutions a minute, whether a person can see whether it ran true or not?" This question was objected to by the plaintiff, and excluded by the judge; and the defendant excepted.

He was then asked: " Whether a person standing upon the floor, an experienced person standing upon the floor and watching this, can see any oscillation?" This question was likewise objected to, and excluded; and the defendant excepted.

The shaft was supported by hangers seven and a half feet apart from centre to centre, and several witnesses testified that this was a safe and ordinary construction.

One Charles L. Pepper, the defendant's superintendent, was called by the defendant as an expert witness. After the witness had said, on cross-examination, that if three hangers had been used the liability to accident would have been decreased, he was inquired of as to the need of a third hanger to support the shaft, and was then asked, " Would that hanger prevent the shaft breaking if there were a flaw in it?" On the plaintiff's objection, the judge excluded the question; and the defendant excepted.

The judge gave general instructions in regard to the case,

which were not objected to; and instructed the jury that the plaintiff must not only prove due care on his part and the injury to himself, but must go further and prove negligence on the part of the defendant, and that that negligence caused the injury; that the proof of the accident is not, taken by itself, evidence of the defendant's negligence; that if the injury to the plaintiff happened because of a defect or flaw in the shaft, which defect or flaw could not have been discovered on an ordinary inspection, and the defendant had no warning or knowledge of such defect or flaw, then the defendant would not be liable; that if the shaft had no defect or flaw in it, and was such a shaft as was ordinarily used for such purposes as it was applied to by the defendant, and was put up and used in the ordinary way, and the shaft broke while being so used, the defendant not knowing or having reasonable cause to know of any insufficiency in the shaft, then the defendant would not be liable.

The defendant asked the judge to rule as follows: " No burden rests on the defendant to show or explain the cause of the accident"; but the judge declined so to rule.

The judge instructed the jury that the burden of proof was on the plaintiff, and continued upon him throughout; that under some circumstances the plaintiff's injury from the breaking of the defendant's machinery, especially where the means of explanation are more likely to be within the control of the defendant than of the plaintiff, is itself evidence of negligence. The breaking of the machinery in connection with a failure on the part of one who presumably can explain to give explanation may be evidence of want of care in providing it. But this principle has no application to this case. The injury, though caused by the breaking of the defendant's machinery, is not in itself evidence that the defendant was wanting in due care to provide a reasonably safe place for the plaintiff to do his work in.

The defendant further asked the judge to instruct the jury: " The measure of the defendant's duty was to exercise due care in providing instrumentalities for the plaintiff to use, and in providing a safe place in which the plaintiff was to work, and *prima facie* it is presumed to have done so." The judge gave to the jury the first portion as prayed for, down to and including the word " work," but declined to give the rest, and instructed them:

" Negligence on the part of the defendant must be proved. It cannot be presumed. It is so far a presumption that the defendant discharged its whole duty, that, until it is proved otherwise, it is to be taken that it did so."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*G. D. Robinson*, for the defendant.

*W. H. Brooks*, for the plaintiff.

MORTON, J. The instructions given by the court covered the rulings asked for by the defendant, and stated the law correctly. Whether the defendant was or was not liable was matter of proof. The burden was on the plaintiff. If he failed for any reason to sustain it, the defendant was entitled to a verdict, not because *prima facie* it appeared that there had been no neglect on his part, but because the plaintiff had not shown any. So far as any presumption existed, it was that the defendant performed its duty, as the court told the jury. The jury were also told in effect that under the circumstances of this case the breaking of the machinery was no evidence of neglect on the part of the defendant; which was going further than to say, as the defendant asked the court to rule, that the defendant was not bound to explain the cause of the accident.

We think, however, that the question to the witness Cumnock should have been admitted.

One of the issues at the trial was whether the defendant had properly inspected the shaft. The defendant introduced testimony tending to show that it had done so before the shaft was started, and from day to day while it was running. The witnesses testified, amongst other things, that the shaft ran without vibration, and that standing on the floor they could see if it or the pulleys oscillated an eighth of an inch. As bearing further on the sufficiency of the inspection made by the defendant, it called the witness Cumnock, who had had a long experience in dealing with machinery of that kind, and who was admitted to be an expert. The defendant's counsel asked him the following question: " Can you state whether or not an experienced person, looking at a shaft revolving, and pulleys upon that shaft revolving two hundred and fifty revolutions a minute, whether a person can see whether it ran true or not?" This was objected

to and excluded, and the defendant's counsel asked the further question, " Whether a person standing upon the floor, an experienced person standing upon the floor and watching this, can see any oscillation?" and this also was excluded. It does not appear very clearly what the answer would have been, but it is fairly to be inferred we think that it would have been to the effect that any oscillation could have been seen by an experienced person in that position; and, assuming that the first question was objectionable in point of form, we think that the last should have been admitted. The subject was not one within the common experience of men. The jury could not tell whether an oscillation in a shaft of the size of this and as far above the floor, and with two heavy pulleys on it revolving at the rate of two hundred and fifty revolutions a minute, could be seen by an experienced person from the floor. Only a person of skill in the business, or familiar with the running of such machinery, would know. *New England Glass Co.* v. *Lovell*, 7 Cush. 319. *Curtis* v. *Gano*, 26 N. Y. 426. See Rogers, Expert Test. (2d ed.) § 109 *et seq.*, for collection of cases. The question did not come fairly within the cases in which it has been held that the extent to which testimony may be accumulated, or allowed in rebuttal, is within the discretion of the court. *Cushing* v. *Billings*, 2 Cush. 158. *Ashworth* v. *Kittridge*, 12 Cush. 193. *York* v. *Pease*, 2 Gray, 282.

As to the question put to the witness Pepper, it is not necessary for us to consider now whether it was admissible at the stage of the examination at which it was put, even if it would have been admissible earlier, upon which we express no opinion. As there must be a new trial on account of the exclusion of the question to the witness Cumnock, the question whether the interrogatory to Pepper was admissible may become immaterial, or may arise under different circumstances.

*Exceptions sustained.*