## CHICAGO & N. W. RY. CO. v. O'BRIEN.

(Circuit Court of Appeals, Eighth Circuit.   September 5, 1904.)

### No. 1,925.

**1. RAILROADS—RELATION TO EMPLOYÉ OF EXPRESS COMPANY—CONTRACT FOR CARRIAGE.**

An express messenger, while riding in a car furnished by a railroad company to the express company by which he is employed, under a contract by which the employés therein are carried free, occupies a relation to the railroad company analogous to that of one of its own employés, and the care which such company owes him in respect of its track, engine, cars, and the operation of its train is measured by that which it owes to those in its immediate service.

**2. SAME—LIABILITY FOR NEGLIGENCE IN OPERATION—IOWA STATUTE.**

The statute of Iowa (Code, § 2071) providing that railroad companies shall be liable for all damages sustained by any person, including employés, in consequence of the negligence of other employés connected with the use and operation of their roads, and that no contract which restricts such liability shall be legal or binding, does not alter the character of the relation between a railroad company and a person injured, nor the rules of evidence appropriate to such relation upon an issue as to negligence.

**3. MASTER AND SERVANT—ACTION FOR INJURY OF SERVANT—EVIDENCE OF NEGLIGENCE.**

In an action against a railroad company to recover for the injury or killing of an employé, or one occupying a like relation to the company, in a wreck caused by the derailment of a train, the fact of the accident is not evidence of negligence on the part of the defendant or its employés to sustain the burden of proof resting on the plaintiff.

Thayer, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

See 116 Fed. 502.

On August 1, 1899, J. J. O'Brien, an express messenger in the service of the American Express Company, was fatally injured by the derailment and wreck near Boone, Iowa, of a fast mail train of the Chicago & Northwestern Railway Company. Mary O'Brien, as the administratrix of his estate, brought an action against the railway company under the provisions of the Iowa statute extending a right of action to personal representatives in cases of death caused by negligent or wrongful act. At the time of his employment O'Brien contracted with the express company to assume the risk of all accidents and injuries sustained in the course of his employment through negligence in the operation of any railroad, whether resulting in death or otherwise, and to indemnify and hold the express company harmless from any demand that might be made against it on account of any claim or recovery because of his injury or death; and he authorized the express company to contract in his behalf with any railroad company upon which he was being or was to be transported as an express messenger that neither he, nor any one claiming under him as personal representative or otherwise, would make any claim for compensation because of injury sustained while in the employment of the express company and resulting from the negligence of the railroad company, its employés, or otherwise. Subsequently the express company and the railway company entered into a contract whereby the former, for a stipulated consideration, acquired the right to use the railroad lines of the latter in the transportation of express matter. Pursuant thereto the railway company furnished cars adapted to the conduct of the express busi-

¶ 1. See Carriers, vol. 9, Cent. Dig. § 978.

ness. It was agreed between them that employés of the express company should accompany the express matter upon the trains, have charge thereof, and that they should be transported free by the railway company. It was also agreed that the express company should protect and hold the railway company harmless from all liability that the latter might be under to the employés of the former resulting in any manner whatever, while they were being so transported. These contracts were in force, so far as they lawfully could be, at the time of the accident and the death of the deceased. A statute of Iowa in force at the time provided that "every corporation operating a railway shall be liable for all damages sustained by any person, including employés of such corporation, in consequence of the neglect of the agents or by any mismanagement of the engineers or other employés when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding." Code, § 2071. In the petition of the administratrix many defects in the track, engine, and cars were alleged as causes of the accident. The evidence at the trial failed to support any of those allegations, and the Circuit Court withdrew them from the consideration of the jury. It was also alleged in the petition that an efficient cause of the accident was an excessive and dangerous rate of speed of the train considering that it was upon a down grade and upon a sharp curve at the bottom thereof. The issue arising from a denial of this allegation was the only one submitted to the jury. The jury determined the issue in favor of the administratrix, and, a judgment having been accordingly entered, the railway company prosecuted its proceeding in error to this court. It is claimed by the administratrix that the verdict of the jury is supported (1) by the evidence of two witnesses who testified to the rate of speed at the time of the accident; (2) by the condition of the wreck as it was discovered to exist immediately after the accident; and (3) by a presumption of negligence which arose from the fact of the accident itself. The two witnesses were Robert Bowles and Job D. Clark. They claim to have seen the train from the bank of a stream between a quarter and a half mile away from the railroad. Between them and the railroad track there was a field of corn six or eight feet in height, and more or less of timber and willows which fringed the stream. The accident occurred shortly after 5 o'clock in the morning. The presence of the two witnesses was accounted for by the fact that they had been fishing during the night. One of them was on top of the bank, which was quite high, and the other further down, nearer the water. Each of them testified that he had previously observed the movements of trains, and could tell the rate of speed. Each testified that immediately before the derailment the train was moving about ninety miles an hour. Bowles said his attention was attracted by the loud and unusual noise made by the approaching train; that the train was in his view two or three seconds before it left the track; that a train moving ninety miles an hour would move one-ninth of a mile in a second; also, that if a train was running at the rate of ninety miles an hour, it would make about two-thirds of a mile in a minute; that he had frequently seen the trains upon the railroad track; and he added, "And it is upon my knowledge and mere curiosity as given here that I think this train was moving ninety miles an hour." The witness Clark said that his attention was attracted to the train by "the louder noise; more distinct than usual; more rapid"; that he thought it was going considerably faster than it commonly did, and that it did not slow up at the curve. When asked what he meant by "faster than common" he replied: "By the roar and the clink of the wheels at the end of the rails. It makes a big difference. That's where I get my rapidity." When asked where he got his idea of the speed, he said: "I hadn't no speed there. I simply got the sound. I didn't try to get any speed when I was down fishing." And being asked how he undertook to say that the train was going faster then than it went before, he answered: "By the noise. I heard an extra noise from what it generally made—roar and sissing noise. * * * I have no particular knowledge of my own how fast that train was making that morning." After stating that in his best judgment the train was moving 85 or 90 miles an hour, the following occurred upon recross-examination: "Q. How

do you make your judgment at that rate of speed? A. Seen foot races. I have run them myself. Q. And that is the way you make it up? A. By foot races. Q. How long would it take you to run a mile now? A. I don't know. Q. How many feet have you got in a mile? A. About 365 feet." The train consisted of an engine, an express car, two mail cars, and a storage car. The engine was badly wrecked. The express car was demolished, and portions of the train and objects therefrom were thrown from the right of way into and across a highway contiguous thereto and into a field adjoining the highway. The schedule rate of speed of the train was 45 miles per hour.

Upon the part of the railway company it was shown that the train left Boone on time at 5 o'clock in the morning. It was due to reach Moingona, 5½ miles to the westward, seven minutes later. This was and had been the schedule time of the train. The conductor of the wrecked train testified that he did not notice that it was going any faster than usual, and he was corroborated in this by other employés upon the train. He also said that there was no necessity for an increase of speed, as the train was on time; that the derailment took place about 4¾ miles west of Boone, and that some one picked up and handed him the watch of the engineer, which had stopped at 5 minutes and 45 seconds after 5 o'clock; that he and the engineer had compared time before they left Boone, and their watches agreed within three or four seconds. He also said that he had theretofore made the run with a freight train down the hill from Boone to Moingona in five minutes, and, although the schedule gave them seven minutes, he had made the run 15 or 20 times in five minutes with the same fast mail train when they were late. He was corroborated in this particular by a locomotive engineer who had previously made the run with special and passenger trains in five minutes —a speed of 66 miles an hour. A roadmaster of the company testified that there had never been any accident or derailment at the curve before or since. The trainmaster of the division west of Boone testified that he considered it safe to make the run from Boone to Moingona at a speed of 70 or 80 miles an hour, considering the condition of the track; and that it would be impossible to tell the rate of speed from the sound the train was making. There was some impeaching evidence of declarations of the conductor and one of the brakemen as to the speed on the morning in question, which may have affected the value of their testimony.

The railway company requested the Circuit Court to instruct the jury that they should not regard the fact of derailment as evidence of negligence on its part. The court declined to give the instruction, and nothing is found in its charge to the jury which fairly embodies the doctrine therein expressed. Counsel for the administratrix in their brief in this court contend that "the accident itself affords reasonable evidence, in the absence of explanation, that it happened from want of care," and that "the presumption of negligence, having once arisen, remains until overcome by countervailing proof."

D. E. Lyon (George T. Lyon, on the brief), for plaintiff in error.

R. M. Wright (P. F. Nugent and Healy Bros. & Kelleher, on the brief), for defendant in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The deceased did not, while upon the train in the performance of his duties as an express messenger, sustain to the railway company the relation of a passenger, and he was not, therefore, entitled to that highest possible degree of care to which a common carrier is held for the safety of those who have paid for their transportation as passengers. Neither was the express messenger a mere licensee. He was not upon the train at the mere sufferance of the railway company, but he was engaged thereon in the performance of duties which had connection with

its business of transportation, and which would naturally have been performed by its own employés had it not been otherwise arranged by contract with the express company. His relation to the railway company was analogous to that of one of its own employés. Railway Company v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560. The measure of care which the railway company owed him in respect of its track, engine, cars, and the operation of its train was the same which it owed to those in its immediate service.

The derailment of the train, the injury to the express messenger, and his death occurred in the state of Iowa. The contracts between the express company and the deceased and between the express company and the railway company, in so far as they provided for the immunity of the latter from all liability to him for the result of its negligence, are contrary to the public policy of that state as expressed in the act of its Legislature. But this statute, while avoiding those provisions of the contracts, did not alter the character of the relation between the railway company and the deceased, nor the rules of evidence appropriate thereto.

The testimony of the witnesses Bowles and Clark should have been, as it doubtless was, laid aside by the jury as not being entitled to serious consideration. Not much more, if any, value can be attached to the condition of the wreck as evidence of the speed of the train at the time of its derailment. We are aware of no standard of comparison which would have enabled the jury to say that the quantum of demolition resulting from the derailment of the train on a downgrade, on an embankment, and at a sharp curve, was such that it was presumably going at a speed in excess of its usual and schedule rate. It is doubtful that there is any common knowledge upon such subject which would justify an inference having the probative force of evidence that the condition described in the record would not have resulted from a speed of 45 miles per hour or less. But, however this may be, it is obvious that it was of great importance to the railway company that the jury be instructed that the fact of derailment of the train did not in itself raise a presumption of negligence for which it was chargeable. Such an instruction was requested, and it was refused by the Circuit Court. It is familiar doctrine that in cases between employé and employer the law does not presume carelessness or negligence on the part of the latter. And the presumption in the case before us is that due care was exercised by the company in respect of the condition of the engine, cars, and railroad track, and also that those in charge of the operation of the train performed their duty. No logical distinction can be made in the application of this presumption of performance of duty between the mechanical condition of the engine and cars on the one hand and the operation of the train upon the other. The burden of proof is upon him who asserts that the employer was negligent. This burden cannot be discharged by mere proof of the occurrence of the accident. To hold otherwise would be to ignore the well-established and long-settled difference between the rules which govern in passenger cases and those which apply when the relation is that of employer and employé. The doctrine res ipsa loquitur is not applicable in cases of the latter character.

In Patton v. Texas & Pacific Railway Company, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, the court said:

"That while, in the case of a passenger, the fact of an accident carries with it a presumption of negligence on the part of the carrier—a presumption which, in the absence of some explanation or proof to the contrary, is sufficient to sustain a verdict against him, for there is prima facie a breach of his contract to carry safely—a different rule obtains as to an employé. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employé to establish that the employer has been guilty of negligence. That in the latter case it is not sufficient for the employé to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion."

In Texas & Pacific Railway Company v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136, a foreman in charge of a switch engine was injured by the explosion of another engine with which he had nothing to do. The Supreme Court approved of the charge of the trial court which embodied the rule "that the mere fact that an injury is received by a servant in consequence of an explosion will not entitle him to a recovery, but he must, besides the fact of the explosion, show that it resulted from the failure of the master to exercise ordinary care either in selecting such engine or in keeping it in reasonably safe repair."

In O'Connor v. Ry. Co., 83 Iowa, 105, 48 N. W. 1002, the court said that "the mere happening of the derailment or the accident would not show negligence"; citing Baldwin v. Railway Co., 68 Iowa, 37, 25 N. W. 918; Case v. Railway Co., 64 Iowa, 762, 21 N. W. 30; Gandy v. Railway Co., 30 Iowa, 420, 6 Am. Rep. 682.

In Bowen v. Ry. Co., 95 Mo. 268, 8 S. W. 230, the court said:

"As between master and servant, the mere fact that an appliance proves to be defective, and the servant is injured, does not make out a prima facie case for the servant of negligence on the part of the master."

In Brymer v. Railway Co., 90 Cal. 497, 27 Pac. 371, an instruction was asked which embodied a clause that "the mere fact that an accident occurred by which the plaintiff was injured does not fix the liability, or even raise a presumption that the defendant was at fault in providing machinery or appliances for the labor in which the plaintiff was engaged." Its refusal was held to be sufficient cause for a new trial.

In Huff v. Austin, 46 Ohio St. 386, 21 N. E. 864, 15 Am. St. Rep. 613, a steam boiler exploded, injuring an employé of the owner, and it was held that the mere happening of the accident was not evidence of negligence.

In Wormell v. Railroad Co., 79 Me. 397, 10 Atl. 49, 1 Am. St. Rep. 321, the court said:

"There is no presumption of negligence on the part of the defendant from the fact alone that an accident has happened, or that the plaintiff has received an injury while in the employment of the defendant."

In Mining Co. v. Kitts, 42 Mich. 41, 3 N. W. 240, an employé was injured by the fall of a bridge, the cause of which was unexplained.

The court held that, while it might be guessed or surmised that there was negligence somewhere, it did not extend beyond conjecture, and that, if a master was to be held liable under such circumstances, the rule that an employé assumes the ordinary risks of his employment would be wholly done away with.

In Baltimore Elevator Co. v. Neal, 65 Md. 438, 5 Atl. 338, the court said:

"The jury should not have been allowed to infer from the simple fact of the happening of the accident that there was negligence or unskillfulness on the part of the captain of the tug. That is justified by no decided case, and is in conflict with the well-established principle that it is incumbent upon the plaintiff in this class of cases to establish by affirmative proof that the injury received by him was caused by the negligent or unskillful act of the fellow servant."

In Brownfield v. Railway Co., 107 Iowa, 254, 77 N. W. 1038, it was held that the rule res ipsa loquitur did not apply to a case where a locomotive fireman was injured by the derailment of an engine on which he was riding caused by a broken axle.

In Grant v. Railroad Co., 133 N. Y. 659, 31 N. E. 220, an employé of the railroad company was injured by a defective drawhead. The court said that it may have been broken on account of a latent defect beyond the reach of inspection, and added:

"Whether it did or not we do not know, and there is no evidence upon the subject. No facts are shown from which the cause of the accident can be more than guessed at. There is food for speculation or wonder, but there is no evidence as to the cause."

The same rule is announced in Hodges v. Kimball, 104 Fed. 745, 44 C. C. A. 193; Bowes v. Hopkins, 84 Fed. 767, 28 C. C. A. 524; Peirce v. Kile, 80 Fed. 865, 26 C. C. A. 201; Railway Company v. Thompson, 70 Fed. 944, 71 Fed. 531, 17 C. C. A. 524; Whitcomb v. Railway Co., 125 Mich. 572, 84 N. W. 1072; Higgins v. Fanning, 195 Pa. 599, 46 Atl. 102; Redmond v. Lumber Co., 96 Mich. 545, 55 N. W. 1004; Railway Co. v. Cook's Adm'r, 24 Ky. Law Rep. 2152, 73 S. W. 765; Ouillette v. Overman Wheel Co., 162 Mass. 305, 38 N. E. 511; Railroad Company v. Kellogg, 55 Neb. 748, 76 N. W. 462.

If in this very case the derailment of the train had in fact been caused by some defect in the engine or cars beyond the reach of that ordinary diligence and care in selection and subsequent inspection which the railway company owed to the deceased—and there is no doubt but that such defects do at times exist—a presumption of negligence arising from the accident itself might naturally result in imposing upon the company a responsibility for an undiscoverable defect. Bearing in mind the relation of the express messenger to the company, and the rules of law which are applicable thereto, it is clear that it was entitled to the instruction requested, in order that it might be protected from such a contingency; and, not only that, but also because the fact of accident did not raise a presumption of excessive speed. The refusal of the trial court to give the instruction was erroneous.

The judgment of the circuit court will be reversed, and the cause remanded for a new trial.

THAYER, Circuit Judge, dissents.