## OMAHA PACKING CO. v. SANDUSKI.

### (Circuit Court of Appeals, Eighth Circuit. July 22, 1907.)

#### No. 2,585.

**1. MASTER AND SERVANT—INJURY OF SERVANT—EVIDENCE OF MASTER'S NEGLI-GENCE.**

The mere fact that an accident happened by which a servant was injured does not itself create a presumption of negligence on the part of the master, and, where negligence is charged as a ground for recovery by the servant against the master, the burden is upon the plaintiff to show that by some act or omission the defendant violated some duty he owed to the plaintiff which caused the injury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 881, 895.]

**2. SAME—DUTY OF MASTER—SAFE PLACE TO WORK.**

The rule which makes it the positive duty of a master to exercise reasonable care to provide a servant with a reasonably safe place in which to work, even if it extends to providing a reasonably safe mode of entrance to and exit from the place where the workmen are employed, is not applicable to a case where the place becomes dangerous in the progress of the work either necessarily or from the manner in which the work is done.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 550.]

**3. SAME—CONDITION OF WAY.**

Plaintiff was employed on the third floor of defendant's packing house, which was reached by an outside stairway running up from a platform, 10 to 14 feet wide, extending along the side of the building. This platform was used by other employés in conveying meat on trucks from one part of the building to another, and there were more or less drippings from the trucks which in cold weather froze upon the platform. After plaintiff had been so employed for three years, in walking along the platform from the stairway in going from work one night in the winter, he slipped on the platform, and was injured. *Held* that, assuming that the fall was caused by ice resulting from such drippings, it was not due to any neglect or breach of duty on the part of defendant, but to a cause the risk from which was known to and assumed by plaintiff.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 610.]

In Error to the Circuit Court of the United States for the District of Nebraska.

Ralph W. Breckenridge (Charles J. Greene, on the brief), for plaintiff in error.

Constantine J. Smyth (Edward P. Smith, on the brief), for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This is an action to recover damages for personal injuries alleged to have been suffered by the defendant in error by reason of the negligence of the plaintiff in error.

Louis Sanduski, plaintiff in the court below (referred to hereinafter as the plaintiff), at the time of his alleged injuries, January 20, 1906, was in the employ of the Omaha Packing Company, defendant in the court below (referred to hereinafter as the defendant), in its

packing house, located at South Omaha, in the hog casing room, or department, and had been so employed for about three years. The room where the plaintiff worked was located in the third story of the building, connected with the defendant's packing plant and accessible from the street by means of a platform and stairway. The platform was 600 feet long, and between 10 and 14 feet wide. There is some conflict in the evidence as to its exact width. The platform, where it connected with the stairway leading up on the outside of the building to the door of the room where Sanduski worked, was between 10 and 15 feet above the ground. John Tnczar, a witness for the plaintiff, testified that it was "maybe 10 and maybe 12" feet from the foot of the stairs to the edge of the platform. There was a railing along the outside of the stairway, but no railing on the platform. It had, however, two pieces of two by four timber spiked to the edge of it. The platform sloped slightly toward the building; the outer edge being about three inches higher than the inner edge. The platform was used, not only as a passageway for employés going to and from their work, but also for trucking the product of the plant, as one of the witnesses puts it, "from the beef house to the tank room," located at different points along the platform, and had been so used during the entire time of plaintiff's employment. The testimony shows that in this trucking process, if there was anything wet in the product conveyed by the trucks, the water would drip off on the platform, and that there usually was water dripping from the product carried on the trucks. All of this was known to the plaintiff. He testified that he knew the platform was used by truckers every day, in cold as well as warm weather, and that water dripped off the meat carried on the trucks onto the platform, and that during his entire term of service he had used this platform and stairway as a passageway in going to and from his work, sometimes during the day time and at other times after dark.

As to the condition of the platform on the morning when plaintiff went to work, the testimony is not altogether clear. Tnczar, who went to work about the same time plaintiff did, testified that he did not see any ice on the platform. Zalinski, another witness, could not say whether there was ice on the platform in the morning. Plaintiff at first said there was ice on the platform, but subsequently said he did not notice whether the platform was frozen or not in the morning. Plaintiff testified that on the day of his injury he went to work in the morning about 6:45, and quit work at about 6:30 in the evening; that it was dark both when he went to work in the morning and when he quit in the evening; that he descended the stairs on the outside of the building leading from the third story down to the platform; that he took a few steps after reaching the platform, when he slipped, and that was all he knew. He testified also that the night was foggy. He could not say whether there was ice on the platform, but stated that he felt "under his feet it was kind of slippery, but not long, and slipped, and that is all he knew." The record does not disclose who found him when he was picked up, or the condition in which he was found. Both Tnczar and Zalinski testified that there was ice in ridges on that part of the platform where they trucked beef, and, when asked how high these ridges were, said they were small. Tnczar further testi-

fied that the ice came there from the water dripping from the product carried on the trucks and that the ridges were made by the trucks.

The theory upon which the plaintiff sought to recover in this case was that the defendant was negligent, in that it had failed to use reasonable care to provide him with a reasonably safe place in which to work, and it is contended by counsel in their brief that this duty of the master extends to a reasonably safe mode of entrance to and exit from the place where the servant was employed. Conceding, for the purposes of this case, that the rule in regard to the master's duty to his servant is as broad as contended for by counsel, yet we think there can be no recovery upon the facts as they are presented by this record. Both the platform and stairway were open and exposed. No one knew better than the plaintiff the manner in which the business was carried on there. He knew that this platform was used daily by men trucking the product of the plant from the beef house to the tank room, and that the drippings fell from the trucks upon the platform. He had been coming and going back and forth to his work almost daily over this platform for about three years, as had the other workmen, and that it was, as one of the witnesses described it, "one of the most traveled ways in the establishment."

It is not contended that there was any defect in the platform itself, but it is sought to charge the defendant with liability upon the sole ground that drippings from the product carried on the trucks on that particular day were permitted to freeze upon the platform, thus making it slippery. The plaintiff must have known the weather conditions before reaching the platform, because he had descended the stairway, which was open and exposed, from the third story of the building, down to the platform, and, if the weather was cold enough to form ice, he must have known that he would necessarily find that portion of the platform, over which the trucking was done, to some degree in a slippery condition, and that it devolved upon him to use more care than at other times when the weather conditions were more favorable.

The mere fact that an accident happened does not of itself create a presumption of negligence on the part of the defendant. Where negligence is charged as a basis of recovery, the burden is upon the plaintiff to show that by some act or omission the defendant has violated some duty which he owed to the plaintiff and which caused the injury complained of. The rule is stated by this court in Northern Pac. Ry. Co. v. Dixon, 139 Fed. 737, 71 C. C. A. 555, as follows:

"The mere happening of an accident which injures a servant fails to indicate whether it resulted from one of the causes the risk of which is the servant's, or from one of those the risk of which is the master's; and for this reason it raises no presumption that it was caused by the negligence of the latter. In such cases the burden of proof is always upon him who avers that the negligence of the master caused the accident to establish that fact, and a naked finding, as in this case, that the accident occurred and that the servant was guilty of no negligence which contributed to cause his injury, is insufficient to sustain this burden, for there are many other causes than the negligence of the master and that of the servant, such as the negligence of fellow servants and latent and undiscoverable defects in place or machinery, which may have produced it." Chicago & N. W. Ry. Co. v. O'Brien, 132 Fed. 593, 67 C. C. A. 421, and cases there cited.

Neither is the rule which makes it the positive duty of the master to provide the servant a reasonably safe place in which to work, even if it extends to providing a reasonably safe mode of entrance to and exit from the place where the workmen are employed, applicable to a case where the place becomes dangerous in the progress of the work, either necessarily or from the manner in which the work is done. In this case, if this platform became dangerous during the day, it was by reason of this trucking carried on in the progress of the work, either necessarily or from the manner in which the work was done by other employés, fellow servants of the plaintiff, engaged in the same general business, and, if the platform became dangerous through their negligence, that was one of the risks which the plaintiff assumed when he entered the defendant's employment. In Deye v. Lodge & Shipley Mach. Tool Co., 137 Fed. 480, 70 C. C. A. 64, the court said:

"Unless the business be of such a complex and dangerous character as to require that it shall be conducted upon a system or scheme, in order to secure the orderly conduct of the business and the safety of those engaged in it, the master's obligation to supply a safe place for his work to be done, and to keep it safe, does not impose the duty of always keeping it in a safe condition so far as its safety depends upon the proper performance of the very work which his servants have there undertaken to do. If a negligent manner of doing the work makes the place less safe, that is one of the risks which all engaged in the work have assumed as a risk of the occupation." American Bridge Company v. Seeds, 144 Fed. 605, 75 C. C. A. 407; City of Minneapolis v. Lundin, 58 Fed. 525, 7 C. C. A. 344.

In any aspect, therefore, in which the case may be viewed, on the facts disclosed by this record, we think the plaintiff was not entitled to recover.

The judgment of the Circuit Court is reversed, with directions to grant a new trial.