ORABELLE JACKSON, administratrix, *vs.* JAMES W. ANTHONY, JR.

Bristol. October 24, 1932. — April 4, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Negligence,* Motor vehicle, In use of way, Contributory, Causing death. *Evidence,* Opinion: expert. *Conflict of Laws. Damages,* In tort.

At the trial of an action of tort by an administrator for causing the death of his intestate through negligence of the defendant in the operation of an automobile in Rhode Island, the only eyewitness to the collision who testified was the defendant, called by the plaintiff, and, if his testimony were believed in its entirety, he could not be found negligent; but there was further testimony descriptive of tire and other marks left by each automobile in the vicinity of the collision and testimony as to signs and marks of contact and damage on the two automobiles, upon which, with the other evidence including testimony of the defendant, findings would have been warranted that the collision occurred about midnight on a rainy, misty night; that the defendant had three companions, all on the front seat with him and one sitting on the lap of another; that the defendant was under the influence of intoxicating liquor; that before the collision the defendant, proceeding at the rate of thirty and thirty-three miles an hour, drove his automobile on to a dirt shoulder of the highway on his right, caused it to collide with a stump and then to careen across the way in front of an automobile in which the plaintiff's intestate was approaching on his right side of the way; and that the collision followed. *Held,* that the questions, whether the defendant was negligent and whether the defendant's burden of proving contributory negligence on the part of the plaintiff's intestate had been sustained, were for the jury.

At the trial of the action above described, the evidence showed damage to so many different portions of the vehicles, exterior and interior, involving structural parts, some of which are not ordinarily seen and whose strength of resistance to force can hardly be said to be within common knowledge, that it could not be said as a matter of law that

the experience and knowledge of the jurors as intelligent men and versed in the ordinary affairs of life would not be instructed and aided by expert testimony from repairmen of long experience in the examination and repair of automobiles which had been in collision; and such testimony properly was admitted.

The action above described was based on a Rhode Island statute which provided that whenever the death of a person shall be caused by a wrongful act, neglect or default of another which if death had not ensued would have entitled the party injured to maintain an action and recover damages, the person who would have been liable if death had not ensued should be liable to an action for damages; that "Every such action shall be brought by and in the name of the executor or administrator of such deceased person, whether appointed or qualified within or without the state and the amount recovered in every such action shall one-half thereof go to the husband or widow, and one-half thereof to the children of the deceased. . . ." It was agreed that in the Rhode Island courts the measure of damages in such an action was the pecuniary loss sustained by the beneficiaries designated in the statute. *Held*, that the damages should be assessed in such action according to the Rhode Island statute and not according to the standard set by the statutes of this Commonwealth.

TORT. Writ dated May 13, 1930.

In the Superior Court, the action was tried before *Gibbs*, J. Material evidence is described in the opinion. There was a verdict for the plaintiff in the sum of $13,000, and the judge reported the action for determination by this court.

*M. R. Brownell, (O. S. Cook* with him,) for the defendant.

*A. E. Seagrave, (J. B. Kelley, Jr.,* with him,) for the plaintiff.

DONAHUE, J. An automobile, described in the record as a coupe, driven by the defendant in a northerly direction on a highway between Bristol and Warren in the State of Rhode Island, collided with a smaller automobile which was being driven in the opposite direction by the plaintiff's intestate, James Jackson, who was killed in the collision. The only eyewitness of the occurrence who testified was the defendant, he having been called by the plaintiff. If his testimony were believed in its entirety he is not chargeable with negligence; but the jury were not bound to give it that much credit. There was further testimony descriptive of tire and other marks left by each automobile in the vicinity of the collision and testimony as to signs and marks of contact and damage on the two automobiles,

which taken with portions of the defendant's testimony warranted a different conclusion. The case comes to this court upon a report after a verdict for the plaintiff and we therefore must take on contradictory evidence the version of facts most advantageous to the plaintiff.

1. The accident happened about midnight on a rainy misty night; the road was wet; mist gathered on the windshields of automobiles; visibility was poor; from his seat in an automobile a driver could just see the white line which was painted in the center of the macadam road. The defendant and three companions had during the evening visited several dance halls and were on their way home. The defendant and two of his companions were seated on the front seat and the fourth sat in the lap of one of the others. There was evidence from which it could be found that the defendant was under the influence of intoxicating liquor. The macadamized portion of the road was nineteen feet wide and there were dirt shoulders on each side. The defendant saw the lights of the Jackson automobile approaching at a distance of one hundred fifty feet and saw the automobile itself when it was seventy-five feet away, at which time the defendant's coupe was travelling at the rate of thirty to thirty-three miles an hour. The defendant's coupe was then on the easterly half of the macadam, which would be the right hand side of the road in the direction in which the defendant was going. Shortly after seeing Jackson's automobile the defendant drove his coupe to his right on to the dirt shoulder and proceeded along the shoulder entirely off the macadam for a distance of twenty-five or thirty feet where it grazed a tree on the roadside seven feet and five inches from the easterly edge of the macadam. It then proceeded along the dirt shoulder eighteen or nineteen feet farther where the right wheel passed over a stone and struck a tree stump which was four feet and nine inches from the easterly edge of the macadam. Then without stopping it turned in a westerly direction, crossed the entire width of the macadam and came to a stop on the westerly side of the road and headed west. The defendant testified that the Jackson

automobile came over on to the easterly half of the road and the collision came when the defendant's coupe was travelling on the dirt shoulder east of the macadam.

The Jackson automobile when first seen by the defendant was proceeding on the westerly half of the macadam and there was evidence which warranted the finding that there the collision occurred. On that part of the road was the greater part of the broken glass resulting from the contact of the vehicles, and, as might be found, were marks along the surface of the street made by spokes of a wheel of the Jackson car after it was broken in the collision. The location and character of marks and indications of contact and damage on both automobiles might have been found to be consistent with the Jackson car being struck while on the westerly part of the macadam by the defendant's coupe in its course across the street as earlier described. The Rhode Island statute prescribing the duty of travellers with vehicles who meet on a highway was in evidence (G. L. of R. I. (1923) c. 99, § 1). It is substantially the same as the Massachusetts statute (G. L. [Ter. Ed.] c. 89, § 1). While there was evidence on which the jury might have reached a contrary conclusion, we cannot say that there was not warrant for the finding that the collision occurred in the manner contended by the plaintiff. On such a finding it was for the jury to decide whether the defendant was negligent. It could not have been ruled as matter of law that the defendant's burden of proving contributory negligence of Jackson had been sustained.

2. Two automobile repairmen of long experience in the examination and repair of automobiles which had been in collision, examined both vehicles shortly after the accident. They described at length the location and character of numerous signs and marks of contact and damage which they observed. Under the defendant's exceptions they were permitted to give their opinions, based solely on such observations, of the manner in which the two vehicles came in contact. The ground of the objection was that the questions asked "called for an opinion on a matter as to which there

was no occasion for evidence of opinion but as to which the jury could draw an inference from their common experience." The testimony of one qualifying as having expert knowledge of a subject is not admissible if that subject is of such a nature that it may be presumed to be within the common experience of men. *New England Glass Co.* v. *Lovell,* 7 Cush. 319, 321. Where jurymen would have no difficulty in forming an opinion for themselves the testimony of an expert witness has no place. *Lynch* v. *C. J. Larivee Lumber Co.* 223 Mass. 335, 340. On the other hand if a situation is presented on the evidence of such character or complexity that it cannot be assumed to be within the ordinary experience or knowledge of men the testimony of a qualified expert is admissible for such help as it may, if believed, give to the jury. *Harrington* v. *Boston Elevated Railway,* 229 Mass. 421, 428. *Ouillette* v. *Overman Wheel Co.* 162 Mass. 305. *Commonwealth* v. *Russ,* 232 Mass. 58. *Commonwealth* v. *Spiropoulos,* 208 Mass. 71, 72. Ordinarily the exterior indications of the point of contact of two colliding vehicles would be likely to furnish a jury with grounds on which they, without aid, might draw all justifiable inferences as to the angle of incidence of the vehicles at the time of the impact and the portions thereof first in contact. The evidence here shows damage to so many different portions of the vehicles, exterior and interior, involving structural parts, some of which are not ordinarily seen and whose strength of resistance to force can hardly be said to be within common knowledge, that we cannot quite assume that the experience and knowledge of the jurors as intelligent men and versed in the ordinary affairs of life would not be instructed and aided by expert testimony. On the particular circumstances here appearing the exceptions to the admission of evidence must be overruled.

3. A right of action was given by a Rhode Island statute to the plaintiff as administratrix for the wrongful act of the defendant committed within that State causing the death of the intestate, who was her husband. Rhode Island G. L. (1923) c. 333, § 14, provides that whenever the death of a person shall be caused by a wrongful act, neglect or default

of another which if death had not ensued would have entitled the party injured to maintain an action and recover damages, the person who would have been liable if death had not ensued shall be liable to an action for damages; "Every such action shall be brought by and in the name of the executor or administrator of such deceased person, whether appointed or qualified within or without the state and the amount recovered in every such action shall one-half thereof go to the husband or widow, and one-half thereof to the children of the deceased . . . ." The parties agree that in the Rhode Island courts the measure of damages in such an action is the pecuniary loss sustained by the beneficiaries designated in the statute. (See *McCabe* v. *Narragansett Electric Lighting Co.* 26 R. I. 427, 434.) The right of action created by the Rhode Island statute was transitory. *Hanlon* v. *Frederick Leyland & Co. Ltd.* 223 Mass. 438, 440. The obligation imposed upon the defendant for his wrongful act in Rhode Island followed him when he came into this State (*Walsh* v. *Boston & Maine Railroad,* 201 Mass. 527, 529) in whose courts the plaintiff administratrix for the benefit of herself and her children is asserting the substantive rights which the Rhode Island statute gave her. It is now settled in this Commonwealth that an obligation created by statute law of another State and founded on a wrongful act there done, causing the death of a person is, with certain exceptions based on considerations of public policy, enforceable in our courts. *Walsh* v. *Boston & Maine Railroad,* 201 Mass. 527. *Hanlon* v. *Frederick Leyland & Co. Ltd.* 223 Mass. 438. *Higgins* v. *Central New England & Western Railroad,* 155 Mass. 176. *Keegan* v. *Director General of Railroads,* 243 Mass. 96, 99. *Holland* v. *Boston & Maine Railroad,* 279 Mass. 342.

The defendant does not argue that the right of action created by the Rhode Island statute was not properly put in suit by the plaintiff in our courts. His sole contention on this branch of the case is that damages should have been assessed with reference to the degree of his culpability as provided by our statute giving a right of action for the death of a person wrongfully caused in this State. It is "the right

of each State to determine by its laws under what circumstances an injury to the person will afford a cause of action." *Davis* v. *New York & New England Railroad,* 143 Mass. 301, 303. As the accident happened in Rhode Island "the plaintiff's right to recover damages for his injury is determined by the law of that State." *Lemieux* v. *Boston & Maine Railroad,* 219 Mass. 399, 401. The question here presented is whether the substantive right vested in the plaintiff by the statute of Rhode Island includes the right to have the damages assessed here in accordance with the law of that State.

The source of the defendant's obligation, and of the plaintiff's rights is the statute of Rhode Island. Unless public policy or similar considerations prevent, she should be permitted in our courts to enforce those rights. *Hanlon* v. *Frederick Leyland & Co. Ltd.* 223 Mass. 438, 441. The Legislature of Rhode Island in first enacting the statute and thus creating a liability where none existed at common law did not merely define a new tort. It also declared the consequences to one who should commit that tort by including in its enactment a provision for damages. The statute fixes both the right and the extent of the right given. There is no sound reason why our courts, if they enforce such a right at all should not enforce it in its entirety. To substitute for the Rhode Island measure of damages the Massachusetts punitive formula for their ascertainment would produce a result which neither Legislature in the passing of the respective death statutes contemplated. Clearly the Massachusetts Legislature did not by its statute attempt to punish wrongful acts committed outside its borders, nor did the Rhode Island Legislature intend the imposition of other and far different consequences of the commission of the wrong defined than its enactment provides. In Massachusetts, when the first statute imposing liability for the wrongful causation of death was passed, the right created was originally prosecuted by an indictment. Although, now, recovery is had through the medium of an action of tort, damages for wrongfully causing death within the limits of the Commonwealth continue to be

assessed with reference to the degree of culpability of the wrongdoer. The Rhode Island theory in accord with the English act and the statutes of the other States generally, requires a determination of the pecuniary loss resulting from death. In other than actions for death that method of fixing damages is known and applied in this State. The question is not which of the two rules is the better but whether the definite right which the plaintiff possesses by virtue of the Rhode Island statute is here to be denied enforcement because of the character of the rule of damages which is an integral part of that right. We see nothing in the application here of that rule of damages to wrongful acts done in Rhode Island which is offensive to good morals, creative of injustice or contrary to the sound public policy of Massachusetts. The case of *Higgins* v. *Central New England & Western Railroad,* 155 Mass. 176, which was a suit brought here and based on the Connecticut death statute was heard upon a demurrer. In the course of extended discussion, leading to the conclusion that no reason appeared for the court declining jurisdiction, the opinion assumes that the Massachusetts rule fixing the elements which are to enter into the assessment of damage would govern at the trial. The question was not then before the court and we do not treat what was there said as controlling the present decision. In *Gould* v. *Boston & Maine Railroad, ante,* 160, without objection from the defendant, damages were assessed pursuant to the New Hampshire death statute, the objection of the defendant being that the instructions did not properly state the New Hampshire law as to damages. While there is not entire harmony in the decisions, the conclusion here reached that damages were properly determined in accordance with the law of Rhode Island is supported by the weight of authority. *Northern Pacific Railroad* v. *Babcock,* 154 U. S. 190. *Slater* v. *Mexican National Railroad,* 194 U. S. 120. *Chesapeake & Ohio Railway* v. *Kelly,* 241 U. S. 485. *Caine* v. *St. Louis & S. F. R. Co.* 209 Ala. 181. *Petrusha* v. *Korinek,* 237 Mich. 583. *Louisville & Nashville Railroad* v. *Whitlow's administrator,* 105 Ky. 1. *Powell* v. *Great Northern Railway,* 102 Minn. 448. *Christensen* v.

*Floriston Pulp & Paper Co.* 29 Nev. 552.   *Giardini* v.
*McAdoo,* 93 N. J. L. 138.   *Loucks* v. *Standard Oil Co. of
New York,* 224 N. Y. 99.   *Hartman* v. *Duke,* 160 Tenn. 134.
*Wellman* v. *Mead,* 93 Vt. 322.

The case was reported on an agreement of the parties in
substance providing that if the judge was wrong either in
applying the Rhode Island rule as to damages or in failing
to direct a verdict for the defendant, further proceedings
should be had in the Superior Court, otherwise the verdict
of the jury for the plaintiff to stand.   Since there was no error
in either respect judgment is to be entered on the verdict.

*So ordered.*