KILLMAN v. ROBERT PALMER & SON SHIPBUILDING & MARINE RY. CO.

(Circuit Court of Appeals, Second Circuit. May 24, 1900.)

No. 145.

1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—INJURY TO EMPLOYE—NEGLIGENCE—EVIDENCE.

Plaintiff, who was employed as guy tender aboard a scow, was injured by the breaking of an eyebolt through which led a guy rope used for the purpose of swinging aboard a boom hung from the mast of the scow. The bolt was originally suitable, and, while it had been used about a year or year and a half, plaintiff had not discovered anything wrong about it, though he had observed it in his work every day for six months. After the break, however, an old crack was discovered in the bolt, which was not discoverable without removal from its position. Held, that defendant was not negligent in failing to remove the bolt, after so brief a use, for the purpose of inspecting its condition for latent defects, unless its attention was directed to the propriety of doing so.

2. SAME—NOTICE OF DEFECTS.

A statement made to an employer that an eyebolt, through which led a guy rope. was so loose that it would turn around, and failed to lead right, and should be changed, is not notice of a latent defect in the bolt which had no connection with its looseness.

In Error to the Circuit Court of the United States for the Southern District of New York.

T. P. Wickes, for plaintiff in error.
H. G. Hull, for defendant in error.

Before WALLACE and SHIPMAN, Circuit Judges, and THOMAS, District Judge.

PER CURIAM. This action is brought to recover damages sustained by the plaintiff by reason of the breaking of an eyebolt, through which led a guy rope to a winch, which rope was used for the purpose of swinging aboard a boom, hung upon the mast of a scow, from the dock, where the load, consisting of deck planks, was attached. The plaintiff was, and for six months before the accident had been, the guy tender. The rope was fastened to a bitt on the port side of the scow, and thence passed through a pulley at the end of the boom; thence through a pulley aft of the bitt on the port side of the scow;

thence to the middle of the scow, and through another pulley attached to an eyebolt, passing through the deck, and fastened underneath by a nut; thence the guy rope passed to the winch, which furnished the power. While attending to his duty, the plaintiff was standing, and was accustomed to stand, with one foot outside and one foot inside the house containing the winch, which brought him facing the mast and eyebolt, and some four feet therefrom. The scow was a comparatively new one, used for transporting lumber and timber, having been built at the yard of the defendant about a year and a half before the accident. There is no sufficient evidence that the bolt in size, make, fitting, or quality of iron, was originally unsuitable; hence the negligence of the defendant, if any existed, arose from failure to use suitable care for the continuance of the eyebolt in proper condition. For several months before the accident the plaintiff had been working in close proximity to it, and stated as follows:

"I did not see anything suspicious about the eyebolt in the deck that looked suspicious or looked wrong. I never took notice of that. I had been working there for six months, right in that very place, looking at that very eyebolt, and the pulley fastened to that very eyebolt, for six months, and I never took notice of anything wrong about it. I never said anything to Mr. Palmer, or anybody else, about that particular eyebolt. I never said anything. I never had reason for saying anything about it to anybody."

From this it is apparent that, if any defective condition of the bolt existed, it was not obvious to a person related to it as was the plaintiff. The plaintiff's brother operated the winch. He testified that after the accident there was an old crack in the eyebolt, and that at the place of the break about one-quarter of it looked bright and the rest looked dark. He further testified:

"The break in the bolt was away down in the wood, and out of sight, about two inches from the top of the woodwork. Nobody could see the break, but it was loose, turning round."

Therefore, so far as the old crack was concerned, the defect was hidden, and was not discoverable without the removal of the bolt. It was not negligence on the part of the defendant to fail to remove the bolt, after so brief use thereof, for the purpose of inspecting its condition, in anticipation of a latent defect, unless its attention was directed to the propriety of doing so. The plaintiff seeks to raise such duty from the evidence of the plaintiff's brother that he had spoken to the proper officer of the defendant respecting it. He states that the bolt was loose; that it had a little play in its socket; and specifically describes it as follows:

"It was a round play. It went right around. It had a little play that way, too [illustrating]."

This witness states that he called the attention of Mr. Palmer, an officer of the company, to the condition of the bolt, as follows:

"I made a complaint to Mr. Palmer—this gentleman here—about the condition of that bolt. I asked him to have it changed. I told him that the bolt was loose on deck, and I told him, 'Mr. Palmer, I wish you would change this bolt,' and he said, 'The first chance we get we will do it.' I said I would like to have it fixed or changed. It was so loose it would turn right around. * * * I told Mr. Palmer the bolt ought to be changed so that the lead would be all right. That would help her. She would lead better,

102 F.—15

because she was a little out of the way. It did not reach straight onto the winch. I told Mr. Palmer that the bolt ought to be changed so that it would lead right. I did not tell him anything else."

This conversation is claimed to have occurred about two weeks before the accident. It will be observed that the complaint made to Mr. Palmer was not that the bolt was defective, but that it was loose, and turned around, and should be changed for the purpose of enabling the guy rope to lead more directly to the winch; and it was with reference to this convenience or advantage that Mr. Palmer apparently made the promise to change the bolt, but his attention was not directed to any defect indicated by its loose condition. But, whatever the purpose of the proposed change, it would have been the duty of the master to inspect the bolt, if the looseness itself gave notice of defect. But the looseness of the bolt seems to have had no connection with the defect alleged to have been discovered in it after the accident, and hence a notice to Palmer of such looseness cannot be construed as a notice of defective condition. The plaintiff's proposition must be that the fact that a bolt turned around was notice of its previous breakage, or that it was weakened in its capacity to carry strain. But there is no apparent causal relation between the loosened bolt and the fault subsequently discovered in it; nor does it appear that its loosened condition lessened its resisting power. Therefore the fact is that the defendant provided a suitable bolt. He had used it for about a year or year and a half, and was not bound to remove it in search of hidden defects. Its looseness, of which the defendant is claimed to have had notice, had no causal relation to the accident. This relieves the defendant of liability. In conclusion it should be observed that it seems highly improbable that the bolt was loose to the extent stated by the plaintiff's brother. The plaintiff's connection with the eyebolt was the more intimate, and for six months he had spent his working days with the bolt before his eyes, and had found not even a suspicion of defect. In view of this evidence, the statement of his brother as to the obvious looseness of the bolt should be accepted with sparing credence. To the one, who desired to escape the charge that he assumed the risk, the bolt was immovable, but, to cast the risk on the master, the kinsman testified to continued, pronounced rotary and lateral motions. The judgment should be affirmed, with costs.