ILLINOIS CENT. R. CO. v. COUGHLIN.

(Circuit Court of Appeals, Sixth Circuit. October 21, 1904.)

No. 1,305.

**1. MASTER AND SERVANT—RAILROADS—DUTY OF INSPECTION.**

A railroad company, which adopts the customary and approved means or tests for the discovery of defects in its appliances, discharges its duty to its employés in that regard, and an injury which occurs to an employé notwithstanding must be accepted as resulting from one of the risks of the occupation.

**2. SAME—INJURY OF SERVANT—LATENT DEFECT IN APPLIANCE.**

Where the nut on the bolt which fastened one end of a handhold on a car either came off when an employé took hold of the handhold, or had previously worked off, by reason of which the employé fell and was injured, and on the trial of an action to recover for the injury there was uncontradicted testimony of the inspector that the nuts were on and screwed down on the night previous, it was prejudicial error to refuse or to qualify an instruction that the defendant company would not be liable if the handhold pulled loose by reason of the nut coming off, and there was nothing to indicate a weakness or defect in the same, and it would not have been ascertained by ordinary care in inspecting the same.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

Francis Fentress, Dist. Atty., and C. G. Bond, for plaintiff in error.
Thomas McCorry and James E. Pope, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is an action for personal injury sustained by the defendant in error while in the service of the plaintiff in error as a switchman. There was a jury, and verdict and judgment for the plaintiff below. The plaintiff, while assisting in switching operations in the yard of the company at McComb City, Miss., attempted to climb upon a passing freight car by grasping the iron handhold on the side. One end of this pulled off the bolt which attached it to the car, and the plaintiff was thrown under a wheel. The question upon which the case turned was whether this handhold had been originally properly secured, and, if so, whether in such case the company had exercised due care in keeping same in safe condition for use.

There was evidence tending to show that the safe and usual way of fastening such a handhold was by bolts running through the wood, with a head on one end and a nut on the other, and that it was not safe to attach such a handhold with a lag screw, a screw with a sharp point on one end and a head at the other. There was some conflict in the evidence as to whether this handhold was attached by a bolt or a lag screw, though the great weight of evidence was that it was attached by a bolt. There was evidence that this car had been overhauled and put in complete order about one month before this accident, and that this

¶ 1. See Master and Servant, vol. 34, Cent. Dig. §§ 238, 240, 242.

handhold was then properly and safely attached and in good order. There was also evidence that the car had been inspected the night before, and the handhold found in good condition; the inspector testifying that there was nothing to indicate any defect in the handholds and that he found this handhold fastened at both ends by bolts and nuts screwed on the ends, and that the taps and nuts were on the ends of the bolts and screwed down solid to the handhold. Within about eight hours thereafter, and before the car had been moved out of the yard where the inspection had been made, this handhold became detached at one end; the nut having been either taken off or having worked off of the head of the bolt.

The uncontradicted evidence is that, within a few minutes after the injury to Coughlin, a careful examination was made, and the nut found to be off. The thread on the bolt did not show wear, and was yet bright. If the nut was in fact on and screwed down solid to the handhold when examined by the company's inspector a few hours before, there is no fact in evidence which tends to explain the accident. Counsel have conjectured that it may have jostled off from the movement of the car around the yard during switching operations, and that there may have been some hidden defect in the threads of the bolt or the nut. In confirmation of this theory there was evidence that a new nut put on at once was found off of this bolt a few hours later, and after the car had traveled but a little more than 50 miles. It has also been conjectured that the nut may have been taken off for some evil purpose, but there is no fact in the record which supports this, other than the difficulty of reconciling the uncontradicted evidence of the inspector with the fact of the coming off of this handhold. It is again conjectured that the inspection was not carefully made, and that the nut must have been off, or in a condition to easily work off, which condition should have been discovered by a proper inspection.

A railroad company is under obligation to use ordinary care in providing its employés with reasonably safe tools and appliances with which to do their work, and under like obligation to keep same in reasonably safe repair, and neither duty can be avoided by imposing it upon some one of its servants. Felton v. Bullard, 94 Fed. 781, 37 C. C. A. 1. But this obligation falls far short of a guaranty that such tools, machinery, or appliances are absolutely safe. Washington & G. R. Co. v. McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, 34 L. Ed. 235; Patton v. T. & P. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361. Nor is a railroad company under the duty of using unusual or extraordinary care in keeping its equipment or tools in repair. The measure of its duty to an employé is that of ordinary care. If it adopts the ordinary, customary, and approved means or tests for the discovery of defects in its appliances, such as are customarily used by prudently conducted companies, it will discharge its duty, and the employé who sustains an injury notwithstanding must bear the loss as one of the risks of the occupation. Texas & P. Ry. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136.

Neither does the fact that this handhold broke loose from its attachment and caused an injury to the plaintiff carry with it any presumption of negligence against the company. That the company had been guilty

of originally furnishing a defective appliance, or of negligence in keeping it in a reasonably safe condition for use, are affirmative facts which it was incumbent on the injured plaintiff to establish. Texas & P. Ry. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; Patton v. T. & P. Ry. Co., 179 U. S. 658, 663, 21 Sup. Ct. 275, 45 L. Ed. 361. Neither is it enough for the injured employé to show that the injury may have been the result of the negligence of the employer, or may have been the result of some cause for which the employer was not responsible. The burden of proof being upon him, he must be able to show that the injury was the consequence of the negligence of the employer. As put by the Supreme Court in Patton v. T. & P. Ry. Co., cited above:

"When the testimony leaves the matter uncertain, and shows that any one of a half dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employé is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

It devolved upon the plaintiff to show either that this handhold had been improperly and unsafely attached, or that the employer had not exercised due care in keeping it in reasonably safe condition for use. The first he sought to make out by evidence that the appliance was attached to the side of the car by a lag screw, when it should have been fastened by bolts. The court below expressed the opinion that the lag screw theory had not been established. But, as there was a positive conflict of testimony upon this question, it was at least one for the jury. Upon the second point the case turned upon the care with which this car had been inspected the night before. If the nut worked off of the head of the bolt as a consequence of some defect which could not have been observed or detected by such care in examination and inspection as might be reasonably exercised, having regard to the character and hazards of the business and the custom of other companies, managed with reasonable care and caution, the plaintiff would have no case, and the jury should have been so instructed with explicitness.

Neither would the jury be justified in arbitrarily setting aside the uncontradicted evidence of the inspector that the nuts were on the ends of the bolts the night before, "and screwed down solid to the handholds." If this was true, the nut must have worked off through some defect in the bolt or nut, or been taken off willfully. Unless the testimony of the inspector was impeached in some way known to the law, there was no legal ground for rejecting it, and this the court should have said to the jury. If the nut was upon the bolt when Coughlin grasped the handhold, what was the defect in either which produced the accident? If the jury find such defect, was it one which should have been discovered by the exercise of that degree of care in inspection which is practiced by a company prudently managed? This question was not put to the jury in any such clear and pointed way as the interests of justice would seem to require. The learned trial judge recog-

nized this to be the turning point of the case, and at one point in his charge said:

"If it was a hidden defect, so concealed in the nature of the structure, if the defect was so concealed and so hidden that an ordinarily prudent and careful man would not observe it when they put it on or when they inspected it, then this railroad company could not be held liable."

There followed the paragraph quoted a long discussion of other matters. At the conclusion of the charge the defendant below requested the following:

"If you find that the handhold pulled loose by reason of the nut coming off, and you find that there was nothing to indicate a weakness or defect in the same, and that it would not have been ascertained by ordinary care and caution in inspecting same, then the defendant would not be liable."

This was the plain law of the case, and covered the very question upon which the case turned, and should have been given as requested. This the court did not do; for it was modified, and given in these words:

"If you find that the handhold pulled loose by reason of the nut coming off, and you find that there was nothing to indicate a weakness or defect in the same, and that it would not have been ascertained by ordinary care and caution in inspecting same, *and that there was an inspection with ordinary care, caution, and skill a few hours before the accident,* then the defendant would not be liable."

The interpolated modification is indicated by italics. The request went to the character of the defect which caused the nut to come off. If it came off as a result of some weakness or defect not discoverable by the exercise of ordinary care, the plaintiff failed to show negligence, irrespective of the question of any inspection at all. As given, the charge was not consistent, and was calculated to mislead and confuse the jury.

That the request had been given in substance in the original charge does not cure the error. There are cases where an inexact statement of the law in one portion of a charge can be regarded as corrected by another and more correct statement. But to make the erroneous statement harmless we must be satisfied that the jury could not have been reasonably misled. A correct statement of the law upon the precise point was so vital to a proper determination of the real issue in the case that we feel we cannot pass this matter as harmless. We do not find it necessary to pass upon any of the other matters assigned as error, and content ourselves with indicating the general line upon which we think the trial of this case should proceed, having agreed upon a reversal on account of the seventh assignment of error only; same being the assignment of error for refusal to give the request above referred to.

Judgment reversed.