BALTIMORE & O. R. CO. v. COPPOCK.†

(Circuit Court of Appeals, Third Circuit. June 17, 1910.)

No. 19.

RAILROADS (§ 350*)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate was struck and killed by a train while driving a team over a grade crossing on defendant's railroad. He had stopped and looked and listened at a point 25 or 30 feet from the crossing, where travelers usually stopped, and from where the track could be seen for 1,450 feet. Not seeing or hearing any train, he drove on, and from that point until his horses were on the track his view was obstructed by a station shed. The train approached at a speed of 60 miles an hour, and there was evidence tending to show that it gave no signal until the deceased was upon the crossing. *Held*, that deceased was not chargeable with contributory negligence as matter of law, but that question, as well as the question of defendant's negligence, was properly submitted to the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1166–1192; Dec. Dig. § 350.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action by Emma V. Coppock against the Baltimore & Ohio Railroad Company.   Judgment for plaintiff (174 Fed. 264), and defendant brings error.   Affirmed.

Kingsley Montgomery and W. B. Linn, for plaintiff in error.

J. De H. Ledward and Albert D. MacDade, for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and ARCHBALD, District Judge.

BUFFINGTON, Circuit Judge.   In the court below Emma V. Coppock recovered a verdict against the Baltimore & Ohio Railroad Company for damages for the death of her husband.   To a judgment entered thereon against it the railroad sued out this writ, and assigned for error the refusal of the court to affirm its point that "under all the evidence in the case your verdict must be for the defendant."   A careful examination of the proofs satisfies us that the facts, and particularly the inferences to be drawn from such facts, were so controverted that it was the province of the jury to pass upon them.   Two questions are involved: First, was there evidence from which the railroad's negligence could be inferred? and, secondly, were the facts so clear, and the inferences therefrom so unquestionable, that the court was bound as a matter of law to adjudge the decedent guilty of contributory negligence?

He, while driving over a public road grade crossing at Felton station, between Wilmington, Del., and Chester, Pa., was killed by an express train.   This public road, known as the "Concord Road," crosses the railroad diagonally and approaches it by a short, steep grade, and the obstructions to vision are such that even when timely signals are given its passage is not free from hazard.   On the road as the decedent approached the crossing there is a viewpoint "at the tree, as it was called, where it was customary for drivers to stop." There was testimony that this was from 25 to 30 feet from the crossing, and here a driver could see back of the station waiting shed in the direction the train was coming to a point in a grove a quarter of a mile distant.   From this stopping point forward, and until his horses were in the pinch of the pull up the approach, or, indeed, on the track, and the driver himself within 8 or 9 feet thereof, his view is shut off by the waiting shed, the front of which is only 8 or 9 feet from the rails.   And when an open view is had it is for only some 1,450 feet to the grove, as the track curves at that point.   This distance a train at the speed of this one would cover in about 15 seconds.

There was proof the decedent, who was on top of a load of manure in a farm wagon driven by two horses, stopped at the tree.   Apparently hearing or seeing nothing, he drove on.   The morning was somewhat misty.   His horses had cleared the track, and his wagon was struck between the wheels by a train running at 60 miles an hour to make up lost time.   There was a conflict of testimony as to whether the crossing signal was blown, and as to whether an electric signal near the crossing was operating, and there was no evidence showing at what distance from the crossing an approaching train started the electric bell.   There was negative proof that witnesses within audible dis-

tance did not hear it ring. One Dutton followed Coppock along the road a short distance behind, but in sight. He knew the train was due, and was on the lookout for signals, as he had a skittish young horse. He said he did not hear a whistle. Moreover, there was positive proof by two witnesses, who were near the railroad and beyond the woods referred to, whose attention was especially called to this train not blowing for their own crossing until it was right upon it, and who swore positively that it did not blow again as it went through the woods between them and Felton station.

Summed up, then, we have testimony that Coppock stopped at the tree where there was a view back of the shed to the curve in the Felton woods. As no train was then in sight, he went on; and there was proof from which the jury could infer no whistle was blown until the train was emerging from the woods, and that Coppock's horses were on the tracks and pulling the wagon up the steep grade before the train came in sight and blew. Such being the facts, for we must so assume where there was evidence from which the jury could find them, Coppock was crossing the track before he had any warning of the approach of the train. Under these circumstances, we are unable to say that Coppock, as a matter of law, was guilty of contributory negligence. He had stopped, looked, and listened at the point the traveling public had chosen as the best for that purpose, and there was neither sight nor sound of danger. In the absence thereof, he followed the usual course of drivers on that road in essaying to pass the crossing, and his course in doing so was not so clearly negligent that the court would have been justified in so holding; but its duty was to submit the question of such contributory negligence to the jury.

In Chicago Company v. Minneapolis Company (C. C. A.) 176 Fed. 240, it was said:

"The question whether or not the Soo Company was guilty of negligence which directly contributed to the injury was an important issue in this case. There are cases in which an act or omisson is in itself so clearly negligent that the fact that other persons in the same or like circumstances have been guilty of a similar act or omission is insufficient to modify its character or its effect. Dawson v. Chicago, Rock Island & Pacific Ry. Co., 114 Fed. 870 [52 C. C. A. 286]; Gilbert v. Burlington, etc., Ry. Co., 128 Fed. 529 [63 C. C. A. 27]. The act or omission of the Soo Company in this case, however, did not appear at the time this evidence was challenged to be of that character, and where the nature of the act or omisson is doubtful the best test of actionable negligence, where available, is the degree of care which persons of ordinary intelligence and prudence commonly exercised under the same or like circumstances. If the care exercised in such a case rises to or about that standard, there is no such negligence; if it falls below it, there is. The legal presumption was that the servants of the Great Western Company, who had been operating its passenger trains upon the tracks leading out of St. Paul which were used by the Soo Company, on the day of the accident, were men of ordinary intelligence and prudence, and hence the fact that it had been their uniform practice to handle their trains under like circumstances in the same way that the Soo Company operated this train on that occasion was both competent and material evidence that it conducted it with reasonable care. Lake v. Shenango Furnace Company, 160 Fed. 887 [88 C. C. A. 69]."

We think this case falls within the principle there stated. The judgment is therefore affirmed.