### CANADIAN NORTHERN RY. CO. v. SENSKE.

(Circuit Court of Appeals, Eighth Circuit. December 24, 1912.)

No. 3,746.

*(Syllabus by the Court.)*

1. NEGLIGENCE (§ 4*)—ELEMENTS—ORDINARY CARE.

An act or omission may be so clearly negligent, or so clearly free from negligence, that the customary use of the same degree of care by others in like circumstances becomes immaterial.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

But, where the character of the act or omission is doubtful,· the true test of actionable negligence is the degree of care which persons of ordinary intelligence and prudence, engaged in the same kind of business, commonly exercise in like circumstances. If the care exercised in such a case rises to or above that standard, there is no actionable negligence. If it falls below that standard, there is.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 6; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 5, pp. 4743–4763; vol. 8, pp. 7729–7731.]

2. NEGLIGENCE (§ 4*)—ACTIONS—ADMISSIBILITY OF EVIDENCE.

In cases of this character, where the question of negligence is at issue, evidence of the ordinary practice and of the uniform custom, if any, of other persons of ordinary intelligence and prudence, engaged in the same kind of business under similar circumstances in the performance of acts like those which are alleged to have been done negligently, is competent, and it is error to reject or disregard it because such evidence presents to the jury the correct standard for the determination of the issue.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 6; Dec. Dig. § 4.*]

3. TRIAL (§ 141*)—TAKING QUESTION FROM JURY—DIRECTION OF VERDICT.

It is the duty of the trial court to direct a verdict at the close of a trial when the evidence is undisputed, and when, upon a question of fact, it is so clearly preponderant, or of such a conclusive character, that the court would be bound, in the exercise of a sound judicial discretion, to set aside a verdict in opposition to it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 336; Dec. Dig. § 141.*]

4. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—ACTIONS—RES IPSA LOQUITUR.

The doctrine res ipsa loquitur is inapplicable to negligence cases arising between master and servant. The fact that an accident occurred is not sufficient to overcome the mere legal presumption that the defendant exercised ordinary or reasonable care in the conduct of its business, in the absence of any evidence whatever to support that presumption. Much less may that fact be permitted to overcome this presumption and the undisputed testimony of an unimpeached witness.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*

Application of doctrine of res ipsa loquitur in actions for injuries to servants, see note to Carnegie Steel Co. v. Byers, 82 C. C. A. 121.]

5. MASTER AND SERVANT (§ 124*)—APPLIANCES—LATENT DEFECTS.

The failure of an employer to find and remove latent and hidden defects, which the exercise of ordinary care would not discover, is not negligence on his part because the discovery and removal of such defects falls beyond the limits of his duty to exercise reasonable care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

6. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—ACTIONS—DIRECTION OF VERDICT.

While the plaintiff, an employé of the railroad company, was climbing upon a freight car, a handhold on the roof pulled of, he fell, and was injured. The handhold was fastened with two screws which pulled out. After the accident one of the holes was found to be rusty and enlarged at its opening, so that one of the screws could be inserted in it and withdrawn by hand. This rusty and enlarged condition of the hole was not visible before the accident when the handhold was in place,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and there were no marks on the roof where the sides of the handhold rested, such as there would naturally have been if the handhold had been loose, and had theretofore wabbled. The boards on the roof were sound, and there was no visible crack or decay in the roof or handhold indicating any defect or weakening in its fastening before the accident. The car was a foreign car. It was inspected by one of the defendant's inspectors when it came upon the road of the defendant in the manner in which other railroad companies and their employés commonly inspected such cars in transit, and the inspector discovered no defect. In addition to the inspection commonly used by other companies and their employés, which was a visual inspection, the defendant's inspector tested this handhold by pulling upon it with the hook of a hammer attached to a handle 20 inches long, and found no looseness or defect therein.

*Held*, the railroad company was entitled to a peremptory instruction to the jury to render a verdict in its favor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

Hook, Circuit Judge, dissenting in part.

In Error to the Circuit Court of the United States for the District of Minnesota; Charles F. Amidon, Judge.

Action by Benjamin Senske against the Canadian Northern Railway Company. Judgment for plaintiff, and defendant brings error. Reversed, and remanded for new trial.

Hector Baxter, of Minneapolis, Minn. (Clark & Sweatman, of Winnipeg, Canada, on the brief), for plaintiff in error.

P. V. Coppernoll, of Park Rapids, Minn. (Coppernoll & Woolley, of Park Rapids, Minn., on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and McPHERSON, District Judge.

SANBORN, Circuit Judge. [6] The plaintiff below was a switchman in the employment of the defendant, the Canadian Northern Railway Company, when the screws which fastened a handhold on the roof of a car of the "Soo" Railroad Company pulled out as he was ascending the car in the discharge of his duty, and he fell and sustained personal injuries. He sued the defendant for negligence in the inspection of its car and recovered a judgment. These facts were established by the evidence without contradiction at the close of the trial. The screws which held the handhold extended through two boards and into another. After they were pulled out, at the time of the accident, one of the holes was found to be rusty and enlarged at its opening, so that one of the screws could be inserted in it and withdrawn by hand. This rusty and enlarged condition of the hole was not visible, however, when the handhold was in place and there were no marks on the roof where the sides of the handhold rested, such as there would have been if the handhold had been loose and had wabbled before the accident. The boards on the roof of the car were sound, so that, if larger screws had been driven into the same holes after the accident, the boards would have held them. There was no visible crack or decay, or other evidence in the roof or in the handhold, of any

defect or weakness in the fastening of the handhold before the acci-
dent. The car came upon the railroad of the defendant at Emerson
Junction in Minnesota, and it was there inspected by Mr. Brown, one
of the defendant's inspectors. He started to make the inspection at
the rear end of the train in which this car was found, examined the
draft gear, the brakes, and the wheels of each car, went forward and
examined in this way the side of each car to see if there was any de-
fect in the irons and sheathing boards, until he reached the front of
the train. He then returned on the other side of the train and there
made the same inspection of each car, and, when he arrived at his
starting point, he climbed up on the top of the train and examined
the handholds, running boards, and brakes on all the cars in the train
to see if he could find any defects. Whenever he found a defect or
anything indicating weakness, or arousing suspicion thereof, he re-
fused to pass the car without a closer inspection and a repair, if repair
was needed. He found no defect or weakness, or indication thereof,
in the roof of this car or in the fastening of the handhold which gave
way. The method of inspection which has now been described, and
which he pursued, is called visual inspection, and it is the only method
customarily and generally used in the inspection of foreign cars com-
ing upon their railroads by the railroad companies of the United States
and their inspectors. Mr. Brown, however, went farther, and made a
more thorough inspection. He had a hammer on a handle 20 inches
long with a hook or claw on the side opposite the face of the ham-
mer, made for the purpose of this inspection, which he had been di-
rected by the defendant to use when he commenced to work for that
company. He tested the security of the handholds on the roofs of
the cars by placing the hook under their handles and pulling them
up. In that way he tested the handhold which gave way with this
hook and found in it neither defect, nor weakness, nor sign of it.
There was no evidence tending to show any other or different facts
relating to the character of the inspection of the car made by the de-
fendant. At the close of the trial, the company made a motion for
a peremptory instruction in its favor, and its denial is assigned as
error.

The defendant requested the court to charge the jury that they were
not permitted to erect in their own minds any particular standard or
grade, or decide any particular methods of doing business, to be neg-
ligent, unless the evidence in the case convinced their minds that the
method adopted by the defendant was such a method as a railway com-
pany exercising ordinary care and prudence in that respect would not
have adopted and practiced under the circumstances, and that all the
defendant was required to do in the inspection of the car was to use
ordinary and usual care, such as is used by railway companies in the
general transaction of their business in that respect. The court de-
nied these requests, and instructed the jury that they should consider
all the facts and circumstances in the case, the danger to employés
from the use of cars and handholds, and their effect upon human life
and action, should then say upon their oaths what reasonable inspec-

tion of the car required, and, having fixed that standard, should render a verdict for the defendant if the inspection made measured up to that standard, and for the plaintiff if it did not. These rulings are assigned as error.

[1] In Louisville, N. A. & C. Ry. Co. v. Bates, 146 Ind. 564, 572, 45 N. E. 109, 111, the Supreme Court of Indiana said:

"In making an inspection, it is the duty of the inspector to use the usual and ordinary tests, and such tools as persons of ordinary prudence use, if any, under like circumstances. No man is held to a higher degree of skill or care than a fair average of his trade or profession, and the standard of due care is the conduct of the average prudent man. If the inspection is made in the usual and ordinary way, the way commonly adopted by those in the business, it cannot be said that it was done negligently. In determining whether an inspection was made with ordinary care a jury can only find facts showing whether the same was made in the usual and ordinary manner, the one commonly adopted by men of ordinary care and prudence engaged in the same business under like circumstances. If it was so performed, it was made with due care, and a jury cannot be permitted to say that it was negligent. They cannot be allowed to set up a standard which shall, in effect, dictate the customs or control the business of a community."

In Shankweiler v. Baltimore & Ohio R. Co., 148 Fed. 195, 197, 198, 78 C. C. A. 353, 355, 356, the plaintiff had been injured by the breaking of a brake-rod. The defect in the rod was not discoverable before the accident by a visual inspection, but could have been found by stripping the rod. The car had been subjected to a visual inspection. The testimony was, as it is in this case, that this was the only inspection that is usually made by railroad companies while a car is in transit. The Circuit Court of Appeals of the Sixth Circuit, then composed of Judges Lurton, Severens, and Richards, said:

"The box car on which the rod broke was in course of transportation, and there is no question but that the inspection made was all that is customarily made by well regulated and pruuently conducted railroads. Against such an inspection the defect was latent, undiscoverable. We think it would be going too far to say that, because the inspection did not disclose the defect, it was not a proper one and ordinary care required something more. Ordinary care does not require an impracticable inspection, one which will cripple and embarrass a railway company in the operation of its trains. * * * The court could not have properly permitted the jury to indulge in mere speculation, find the railroad company guilty of negligence, because. although it used the ordinary method of inspection, it did not use this method suggested by one person, or that method suggested by another, when there was an utter lack of testimony showing or tending to show that either had ever been used by any prudently conducted company, or, if used, would prove effectual."

In Washington, etc., R. R. Co. v. McDade, 135 U. S. 554, 569, 10 Sup. Ct. 1044, 1049 (34 L. Ed. 235), where the question was what degree of care it was the duty of the railroad company to exercise in furnishing machinery for its employés to use, the Supreme Court declared that a charge that it "had a right to use and employ such as the experience of trade and manufacture sanctioned as reasonably safe was in strict accord with the principles laid down by the decisions of that court."

201 F.—41

In Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 416, 12 Sup. Ct. 679, 682 (36 L. Ed. 485), this charge was approved:

"You fix the standard for reasonable, prudent, and cautious men under the circumstances of this case as you find them, according to your judgment and experience of what that class of men do under these circumstances, and then test the conduct involved by that standard."

And in Union Pacific Ry. Co. v. Daniels, 152 U. S. 684, 690, 14 Sup. Ct. 756, 758 (38 L. Ed. 597), the Supreme Court gave its sanction to the rule that the railroad company's duty to keep advised of the condition of its cars and machinery "was discharged by the defendant if the care disclosed by it in these several matters accorded with that reasonable skill and prudence and care which careful, prudent men, engaged in the same kind of business, ordinarily exercised."

These authorities, and a multitude more, sustain the established rule that the standard of ordinary or reasonable care is that degree of care (1) which ordinarily prudent persons, (2) engaged in the same kind of business, (3) usually exercise under similar circumstances. It is plain that the care which extraordinarily cautious or unusually careless persons use would not be a correct standard. Nor would the care which prudent persons engaged in other kinds of business would use be the true standard. The care a farmer or merchant would deem proper, in the absence of evidence to guide him, and would use in running an engine, or building a bridge, would be no criterion of the ordinary care exercised by persons customarily engaged in those occupations. Nor would the degree of care that prudent persons use or would use under different circumstances furnish a just criterion of ordinary care under the circumstances of a given case.

Moreover, this rule that ordinary care, and hence ordinary inspection, is that degree of care and of inspection which ordinarily prudent railroad companies, their officers and employés engaged in the same kind of business commonly use under similar circumstances, is also the logical and unavoidable result of the reason of the case. The rule that requires reasonable inspection is a corollary of the general rule that it is the duty of a railroad company to use ordinary care to furnish, and ordinary care to keep in repair, reasonably safe cars, rails, engines, and other parts of the great machine which its railroad and equipment constitute. In the absence of proof to the contrary, the legal presumption always is that each railroad company, its officers and employés, are faithfully discharging this duty. This presumption is but an application of the universal principle which underlies all civilized government and conditions the enforcement of all rights and the administration of all remedies that all men are presumed to obey the laws, and to discharge their legal, moral, and social duties until the contrary is proved. Cole v. German Saving & Loan Society, 124 Fed. 113, 119, 59 C. C. A. 593, 599, 63 L. R. A. 416. Railroad companies, their officers and employés, are not exempt from this principle. The presumption in the case at bar, therefore, was in the first instance that the defendant inspected this car with ordinary, and hence with reasonable, care, and the burden was upon the plaintiff to prove that it failed to do so. When the degree of care which the railroad com-

pany actually exercised had been proved and the question arose whether or not this was ordinary or reasonable care, the legal presumption still prevailed that other railroad companies, their officers, and employés commonly exercised ordinary care in making such inspections, and the uncontradicted evidence of their customary method of making these inspections under like circumstances necessarily established, in the absence of countervailing evidence, the true standard of ordinary care by which the inspection made by the defendant must be measured.

The validity of the general abstract rule that the measure of care required of an employer is that degree of care which an ordinarily prudent man, engaged in the same kind of business, would have exercised under similar circumstances, is conceded.   In cases like Texas & Pacific Ry. Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905, and Chicago, Milwaukee & St. Paul Ry. Co. v. Moore, 166 Fed. 663, 92 C. C. A. 357, 23 L. R. A. (N. S.) 962, in which there is no proof of the degree of care which other ordinarily prudent persons engaged in the same kind of business commonly use, juries may measure the care required of a defendant by the application of this rule to other facts and circumstances in evidence before them. But the best evidence of the degree of care which ordinarily prudent persons would have exercised under given circumstances is the degree of care which ordinarily prudent persons, engaged in the same kind of business, customarily have exercised and commonly do exercise under similar circumstances.   And, when the evidence of this degree of care is substantial or undisputed, it furnishes the true and the best standard of ordinary care by which that actually used should be measured in all debatable cases.

What the true standard of ordinary care is in cases of this character is an exceedingly grave and important practical question to all employers and employés.   It is very important that this standard should be as fixed, certain, and well known as possible, so that employers can know before the events whether or not they are exercising the requisite care and faithfully discharging their duties.   The degree of care commonly exercised by other persons engaged in the same kind of business under similar circumstances presents such a standard. The opinions and verdicts of juries, no two of which would probably agree, fixing the standard by which to measure the employers' care after the events have happened, would necessarily be variant, uncertain, and speculative, and would furnish no reasonably certain standard of measurement whatever.

It is not denied that exceptional cases sometimes arise in which the degree of care exercised is so clearly insufficient, or so plainly ample, that the customary use of the same degree by others in like circumstances becomes immaterial.   Dawson v. C., R. I. & P. Ry. Co., 114 Fed. 870, 872, 52 C. C. A. 286, 288; Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. 529, 534, 63 C. C. A. 27, 32.   But the case at bar is not of that character.   It is one of the great multitude of cases in which the sufficiency of the degree of care exercised by the defendant was, in the absence of evidence, debatable, and in which its sufficiency must be measured by the evidence in the case and rules of

law applicable thereto. In such cases the best test of actionable negligence and the true standard for the measurement of ordinary care is the degree of care which persons of ordinary intelligence and prudence, engaged in the same kind of business, commonly exercise under like circumstances. If the care exercised in the case rises to or above that standard, there is no actionable negligence. If it falls below that standard, there is. Chicago Great Western Ry. Co. v. Egan, 159 Fed. 40, 45, 86 C. C. A. 230, 235; H. D. Williams Cooperage Co. v. Headrick, 159 Fed. 680, 682, 86 C. C. A. 548, 550; Lake v. Shenango Furnace Co., 160 Fed. 887, 895, 88 C. C. A. 69, 77; Cryder v. Chic. R. I. & Pac. Ry. Co., 152 Fed. 417, 418, 81 C. C. A. 559, 560; Chicago Great Western Ry. Co. v. Minneapolis, St. Paul & S. S. M. Ry. Co., 176 Fed. 237, 242, 100 C. C. A. 41, 46, 20 Ann. Cas. 1200; Southern Pacific Co. v. Hetzer, 135 Fed. 272, 281, 285, 68 C. C. A. 26, 35, 37, 1 L. R. A. (N. S.) 288; Illinois Central R. Co. v. Coughlin, 132 Fed. 801, 804, 65 C. C. A. 101, 104; Shankweiler v. Baltimore & O. R. Co., 148 Fed. 195, 197, 198, 78 C. C. A. 353, 355, 356; Louisville, N. A. & C. Ry. Co. v. Bates, 146 Ind. 564, 45 N. E. 109, 111; Baltimore & O. R. Co. v. Coppock, 179 Fed. 682, 684, 103 C. C. A. 86, 88; The Olympia, 61 Fed. 120, 9 C. C. A. 393; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 416, 12 Sup. Ct. 679, 36 L. Ed. 485; Washington, etc., R. R. Co. v. McDade, 135 U. S. 554, 559, 10 Sup. Ct. 1044, 34 L. Ed. 235; Union Pacific R. R. Co. v. Daniels, 152 U. S. 684, 690, 14 Sup. Ct. 756, 38 L. Ed. 597; Chicago, I. & L. Ry. Co. v. Wilfong (Ind. App.) 88 N. E. 953, 954; Allen v. Union Pacific Ry. Co., 7 Utah, 239, 26 Pac. 297; Iron-Ship Building Works v. Nuttall, 119 Pa. 149, 158, 13 Atl. 65; Titus v. Railroad Co., 136 Pa. 618, 626, 20 Atl. 517, 20 Am. St. Rep. 944.

And where, as in this case, that degree of care is established by uncontradicted evidence, and the proof is clear that the care exercised by the defendant rose above it, it is error to permit the jury to establish in their minds a higher standard of ordinary care after the accident, a standard unknown, uncertain and speculative, and to cast the defendant in damages because the care it used did not reach that standard. The court below should have given to the jury the instructions requested by the defendant and it should have refrained from instructing the jury that they might fix in their own minds and measure the care of the defendant by a standard of ordinary care different from the degree thereof which the proof established was commonly used by prudent and well-regulated railroad companies, their officers, and employés under similar circumstances.

[3] The other question in the case is: Was it the duty of the court to instruct the jury to return a verdict for the defendant? It is the duty of the trial court to direct a verdict at the close of the trial when the evidence is undisputed, and when, upon a question of fact, it is so clearly preponderant, or of such a conclusive character, that the court would be bound, in the exercise of a sound judicial discretion, to set aside a finding in opposition to it. Southern Pacific Co. v. Pool, 160 U. S. 438, 440, 16 Sup. Ct. 338, 40 L. Ed. 485; Union Pacific R. R. Co. v. McDonald, 152 U. S. 262, 283, 14 Sup. Ct. 619, 38 L. Ed. 434;

Delaware, Lackawanna & Western R. R. Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; Patillo v. Allen-West Commission Co., 131 Fed. 680, 686, 65 C. C. A. 508; Chicago Great Western Ry. Co. v. Roddy, 131 Fed. 712, 713, 65 C. C. A. 470, 471; Woodward v. Chicago, M. & St. P. Ry. Co., 145 Fed. 577, 578, 75 C. C. A. 591, 592.

[2] The degree of care exercised by the defendant in the inspection of the car was proved by the uncontradicted testimony of the Inspector Brown. Evidence of the degree of care exercised by other railroad companies, their officers and employés, engaged in the same kind of business, in like circumstances, was competent and admissible, because the legal presumption is that they were reasonably prudent and that they discharged their legal and moral duties, and because the degree of care they exercised presented the correct standard of ordinary care by which to measure the care used by the defendant in its inspection. Upon the question of negligence, or none, evidence of the ordinary practice and of the uniform custom, if any, of other persons of ordinary intelligence and prudence engaged in the same kind of business under similar circumstances, in the performance of acts like those which are alleged to have been done negligently, is competent, and it is error to reject or disregard it because it presents to the jury the correct standard for the determination of the issue. Chicago G. W. Ry. Co. v. Minneapolis, St. Paul & S. S. M. Ry. Co., 176 Fed. 237, 242, 100 C. C. A. 41, 46, 20 Ann. Cas. 1200; Lake v. Shenango Furnace Co., 160 Fed. 887, 895, 88 C. C. A. 69, 77; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 416, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Union Pacific Ry. Co. v. Daniels, 152 U. S. 684, 691, 14 Sup. Ct. 756, 38 L. Ed. 597; Washington, etc., Ry. Co. v. McDade, 135 U. S. 554, 569, 10 Sup. Ct. 1044, 34 L. Ed. 235; Texas & Pacific Ry. Co. v. Barrett, 166 U. S. 617, 619, 620, 17 Sup. Ct. 707, 41 L. Ed. 1136; Choctaw, etc., R. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96; Charnock v. Texas & Pacific R. Co., 194 U. S. 432, 437, 24 Sup. Ct. 671, 48 L. Ed. 1057; Chicago Great Western Ry. Co. v. Egan, 86 C. C. A. 230, 159 Fed. 40.

[4] Such evidence was produced. It was uncontradicted, and it conclusively established the fact that the degree of care customarily used by other railroad companies, their officers and employés, in the inspection of foreign cars in transit, was that which gave them visual inspection only. Brown's uncontradicted testimony was that he gave this car such inspection and more; that, in addition to that inspection, he tested the handhold which gave way, by pulling upon it with the claw or hook of his hammer; in other words, that he inspected it with more than ordinary care. Unless, therefore, the jury was at liberty to disbelieve or disregard his testimony, the defendant was entitled to their verdict. There was no evidence or circumstance to contradict or countervail his testimony except the fact of the accident. But that fact was insufficient to overcome the mere legal presumption that the inspection was made with ordinary care in the absence of all evidence to support it. Much less can it be permitted to overcome that presumption and the testimony of this unimpeached inspector.

The fact of an accident raises no presumption of the negligence of an employer and the burden is on the employé, notwithstanding the accident, to prove that the employer was guilty of negligence which caused the injury. Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 663, 21 Sup. Ct. 275, 45 L. Ed. 361; Texas & Pacific Ry. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; Midland Valley R. Co. v. Fulgham, 181 Fed. 91, 95, 104 C. C. A. 151, 155; Minneapolis General Elec. Co. v. Cronon, 166 Fed. 651, 659, 92 C. C. A. 345, 353; Cryder v. Chicago, R. I. & Pac. Ry. Co., 81 C. C. A. 559, 561, 152 Fed. 417, 419; Northern Pacific Ry. Co. v. Dixon, 139 Fed. 737, 740, 71 C. C. A. 555, 558; Chicago & N. W. Ry. Co. v. O'Brien, 67 C. C. A. 421, 424, 426, 132 Fed. 593, 596, 598.

[5] The witness Brown was not impeached. His testimony was not contradicted by any witness, nor were there any countervailing facts or circumstances to overcome it, and neither the jury nor the court could be permitted to disregard it. A trial at which it should be disregarded would not be a trial according to the law and the evidence. The unavoidable result is that the evidence conclusively proved that the degree of care exercised by the defendant in making the inspection rose above the ordinary care commonly exercised by prudent and well-regulated railroad companies, their officers and employés, under like circumstances, that the defect in the fastening of the handhold was a latent, hidden one which was not discoverable by an inspection with ordinary care, and the failure of an employer to find and remove such latent defects which ordinary care is unable to discover constitutes no negligence on his part, because the limit of his duty is to exercise reasonable care, and the discovery and repair of such defects falls without that limit. Cryder v. Chicago, R. I. & Pacific Ry. Co., 152 Fed. 417, 419, 81 C. C. A. 559, 561; Illinois Central R. Co. v. Coughlin, 132 Fed. 801, 802, 65 C. C. A. 101, 102; Hodges v. Kimball, 104 Fed. 745, 753, 44 C. C. A. 193, 201; Killman v. Robert Palmer & Son Ry. Co., 42 C. C. A. 281, 102 Fed. 224; Carruthers v. C., R. I. & P. Ry. Co., 55 Kan. 600, 605, 40 Pac. 915; Allen v. Union Pacific R. Co., 7 Utah, 239, 26 Pac. 297, 298; Atchison, T. & S. F. R. Co. v. Wagner, 33 Kan. 660, 666, 7 Pac. 204. And there is no escape from the conclusion that the plaintiff below failed to produce any substantial evidence of the negligence of the company and the court should have instructed the jury to return a verdict in its favor. The judgment below must therefore be reversed, and the case must be remanded to the trial court, with instructions to grant a new trial.

HOOK, Circuit Judge. Though I agree to a new trial in this case, I do not agree to some parts of the foregoing opinion regarding the effect of custom upon the question of the care to be exercised by a particular employer. What is generally done in the like calling or occupation to prevent injuries is, of course, evidence of the proper precaution but it is not more. It seems to me that here it has been given an undue if not, practically, a controlling influence.