## AMERICAN CAR & FOUNDRY CO. v. DIETZ.

(Circuit Court of Appeals, Eighth Circuit. February 26, 1913.)

### No. 3,833.

MASTER AND SERVANT (§ 124*)—INJURIES TO SERVANT—DEFECTIVE MACHINE.

Plaintiff was thrown from the top of a car and injured by an electric shock received from an electric emery wheel that he was using. He had used the machine for some time before, and on the afternoon before the injury, ascertaining that the hood was loose, took the machine to defendant's repair man for inspection and repair. After it was repaired, plaintiff started to use it on the succeeding day, and received the shock. There was no evidence as to the particular defect in the machine that permitted the escape of the electricity; but it appeared that it might have been caused by the wearing off of the insulation on the conductor cord, or by the detachment of the fine wires therein. *Held*, that such facts were insufficient to show defendant's negligence, under the rule that a master, having adopted the customary and approved methods or tests for the discovery of defects in its appliances, discharges its duty to its employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Henry Dietz against the American Car & Foundry Company. Judgment for plaintiff, and defendant brings error. Reversed, with directions.

William R. Gentry, of St. Louis, Mo. (Edwin W. Lee, M. F. Watts, and G. A. Orth, all of St. Louis, Mo., on the brief), for plaintiff in error.

B. R. Brewer and Charles W. Casey, both of St. Louis, Mo., for defendant in error.

Before SANBORN, Circuit Judge, and WM. H. MUNGER and TRIEBER, District Judges.

WM. H. MUNGER, District Judge. Henry Dietz brought this action against the American Car & Foundry Company to recover for an injury sustained by him while in the employ of said Company. In his petition he alleged that:

"On or about the 3d day of October, 1911, in said city of St. Charles, on top of one of the cars then being built, and whilst using a machine that had been

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

furnished to him with which to grind off the rough edges of irons which were being used in constructing said cars of defendant, and whilst operating said machine, which was run and operated by electricity and electrical appliances, and whilst in the exercise of reasonable care for his own safety, the machine by some means unknown to plaintiff became unmanageable and through some defect in the wire, which was then heavily and dangerously charged with electricity and connected with said machine, that by reason of some defect not known to the plaintiff, but known to defendant, or which defect by the exercise of reasonable care could and should have been known to defendant, the machine, which plaintiff was using, became charged with electricity, and when he took hold of it, to move it from one place to another to do the work assigned him, both of his hands were caught and held fast to the handles of the machine, and by reason of the force of the electricity and its dangerous character plaintiff was whirled about the top of the car on which he was working, and thrown violently to the cement floor beneath, a distance of some 12 or 15 feet, and as the direct result of said shock and fall the plaintiff received the following injuries, to wit.  *  *  * "

From the evidence it appears that the machine in question was a small electrical driving machine, which drove an emery wheel used to grind down the rough ends that were welded on joints. The machine had a small, flexible cord, by which it could be attached to sockets in different parts of the building near where it was to be used. This cord, to give it flexibility, was composed of a number of small insulated wires. There was a small hood over the emery wheel to prevent the little particles of iron from flying in the face of the workmen. Plaintiff had been working in the shops of the defendant for about 16 years, and had used one of these electrical machines off and on during 4 weeks preceding his injury. The afternoon before the injury, the hood over the emery wheel being a little loose, and the machine needing, as he thought, oiling, the plaintiff took the machine to the repair rooms, and told the repair man to oil the machine, to fix the wheel protector, look it over, and see that it was in good order. This the repair man did, handed it back to the plaintiff, who took it back to his work, and used it that afternoon from an hour and a half to an hour and three-quarters, until the close of his day's work, when he returned it to the usual place. The next morning, returning to his work, he took the same machine, went onto the car, and, after fastening the cord to an electric socket, turned on the electricity, and, as he pressed a button or lever on the machine, to start the emery wheel in motion, he received an electric shock, which threw him from the car to the floor below, causing him the injuries complained of.

What the defect was in the machine, which caused it to give him such electric shock, is not disclosed by the evidence. There was testimony to the effect that, if the insulation upon the small cord spoken of became worn off, so that two of the wires could come together, it would produce such a shock, or, if one of the wires in the machine should become detached, it probably would produce such a shock. There was evidence to the effect that the insulation would be worn off from the cord by the workmen dragging it over the rough places on the car, instead of lifting the cord up when they moved about the car from place to place. There was evidence, also, tending to show that some of the little wires in the machine frequently became detached by employés lifting and carrying the machine by the cord,

instead of taking hold of the machine itself. It appears from plaintiff's evidence that at about 4 o'clock in the afternoon of the day before he took the machine to the repair shop to be oiled, have the hood or protector tightened up, and the machine generally looked after to see that it was all right, which the repairer did. As before said, it does not appear what the defect was in the machine in question which caused the shock to the plaintiff.

At the close of all of the evidence, defendant asked the court to instruct a verdict in its favor, which was overruled, and defendant has brought the case here on error.

The pleadings and evidence bring this case directly within the rule announced in Ill. Cent. R. Co. v. Coughlin, 132 Fed. 801, 65 C. C. A. 101, Midland Valley R. R. Co. v. Fulgham, 181 Fed. 91, 104 C. C. A. 151, Patton v. Texas & Pac. R. R. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, and Looney v. Metropolitan R. R. Co., 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564, and it was error to refuse the requested instruction.

The judgment is therefore reversed, with directions to grant a new trial.