CORREA, PLAINTIFF AND APPELLANT, *v.* FAJARDO SUGAR COMPANY, DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan in an Action for Damages.

No. 2226.—Decided April 19, 1921.

DAMAGES—LABOR ACCIDENT—RES IPSA LOQUITUR.—Although the federal courts generally seem inclined to hold that the doctrine of *res ipsa loquitur* is not applicable to an action for damages by an employee against his employer, the rule thus established is not applicable in jurisdictions governed by the Civil Law in which the doctrine of fellow-servants is unknown, and that maxim is in complete harmony with the principles underlying the Civil Code.

The facts are stated in the opinion.
*Messrs. J. B. Soto* and *A. García Veve* for the appellant.
*Mr. J. Sifre, Jr.,* for the appellee.
MR. JUSTICE HUTCHISON delivered the opinion of the court.

Plaintiff appeals from a judgment of dismissal rendered after sustaining a motion for nonsuit.

The principal, if not the only, question involved is whether or not the doctrine of *res ipsa loquitur* may be invoked in an action brought by an employee against his employer, and if so, whether or not the principle involved is applicable to the facts herein.

The testimony of plaintiff, in so far as pertinent to this question, is as follows:

On direct examination:

What was your work there?—At the receptacles.

What was your particular work at the receptacles?—The cleaning of them.

To what receptacles do you refer?—I was cleaning receptacle No. 1.

But I mean to say, a receptacle of what?—A brick receptacle into which the cane juice flows.

Is that at the factory?—Yes sir.

On or about the month of March, 1913, were you engaged in that work?—Yes sir.

While you were engaged in that work did any accident occur to you?—Yes sir.

What happened?—When I had finished cleaning receptacle No. 1 and was about to clean No. 2, I was compelled to pass over a grating under which there is a hammock-carriage and in passing I went to get the rake with which I was cleaning the receptacle and stepped on the grating which then broke and thereupon I was caught underneath and suffered the fracture of a leg.

What do you mean in saying that you were caught underneath? —That the hammock-carriage was underneath.

In consequence of this, did anything happen to you?—This leg was fractured.

Where about?—Below the knee.

Were you required to pass over the grating to perform your work? —Yes sir.

Did you have to stand up there?—Yes sir.

What was the object of that grating; what was it there for?—It was to pass over for the cleaning of the receptacles.

Did that happen at day time or at night?—At night.

At what time?—About 11 or 12 o'clock.

On cross examination:

I want you to explain to the court in detail what kind of grating is that over which you had to pass so that the court may know of what kind of apparatus we speak, and what was its condition.—The grating was made of some flooring boards and under it was the hammock.

What was that hammock for?—It was for the collection of bagasse while the cane juice came through the strainer.

Then there was a place where the hammock went through carrying the bagasse to what place?—The big hammock of the cane press.

Was any grating over that hammock?—Over the small hammock.

Of what was the grating made, of iron or wood?—Of wood.

Was it made of a single piece?—Of several pieces of flooring boards.

What was the width of each board more or less?—About one inch and a half or an inch and a quarter distant one from the other.

So that there were several small narrow boards, one attached to the other?—Yes sir.

Why did you suffer that accident, how did it happen?—I was compelled to clean receptacle No. 2 and in passing over the grating it broke.

How did it break, the whole thing or one of the little boards, or what?—Some little boards.

How many, if you know?—I did not pay any attention at the moment, it was enough to let my foot go through.

But don't you know how many were broken?—No sir.

Another witness says:

Direct examination:

What was Juan Correa doing at the central when you saw him? —He was engaged in the work of cleaning the receptacles of the old cane-press at the central; he was required to clean three receptacles.

Was the work done by Juan Correa at day time or at night?— At night; he worked from 6 o'clock in the evening till 6 in the morning.

Do you know whether Juan Correa, while engaged at the central in that kind of work to which you have referred, suffered any accident?—I was a laborer at the central and brought the samples to the laboratory and when I went for the laboratory samples from

the cane press Correa went down to clean the aforesaid receptacle, he stood on one of the wooden gratings and at the moment of cleaning the receptacle the grating broke.

And what happened in consequence of this?—Well, I was the only one at the time as I went to get the samples and inasmuch as I myself was unable to catch hold of the rail, he was caught by his leg which was fractured and thereupon the other laborers came to help me to assist him.

Did you notice whether he suffered any blow?—Yes sir, because his leg had been caught with the same rail.

Is that what is called the hammock?—Yes sir, an iron rail.

At what time did that happen; was it at day time or at night?—That happened between 11 and 12 o'clock at night.

You have stated that you were alone there.—At the time of the fracture of his leg there was nobody there and the people gathered around after the shouting.

On cross examination:

Was this a wooden grating?—Yes sir.

What was the width of the several boards, more or less?—I cannot say anything as to the width.

A foot?—I don't know.

Half a foot?—I cannot say.

Two inches?—I cannot say.

How long did you work there?—About a year.

Did you work near that grating for about a year?—No sir.

How long did you work near that grating?—I did not take any samples over it.

When was the first time that you passed over that grating on the day of the accident, if you really passed over it? What I want to know is this: you say that you have worked one year at the Central Fajardo?—Not exactly.

Did you often pass over the grating?—Certainly I did.

Did you know of it?—Yes sir.

Did you know where it was?—Yes sir.

Did you know it was made of wood?—Yes sir.

Did you ever notice the approximate width of one of those boards, that is, if it was a foot, or two feet, half a foot, or three inches, more or less?—I did not take the precaution of fixing my attention because in going for samples I could not lose any time.

Direct examination:

But did you see the grating?—Yes sir.

Do you remember to have ever seen it?—Yes sir.

Then you have to remember the width of the grating, more or less. The opposite party does not ask you to give an exact measure. —Of a width allowing a leg to go through.

Do you say that it was a grating?—Yes sir.

We don't require of you to give the width of the whole little bridge but of the boards which formed the grating; what was its width more or less?—They might be of this width (approximately three inches, the witness says).

Cross examination:

It is not the space between the boards but the width of the board. Is that what you mean that it was of three inches?—Yes.

Appellant, in addition to the citation of *Sweeney* v. *Erving*, 228 U. S. 233, and various decisions by the courts of last resort of the different States, insists that the doctrine invoked is peculiarly applicable in this jurisdiction under the provisions of sections 1803 and 1804 of the Civil Code, upon which this action is based, as interpreted by the Spanish courts and commentators.

Counsel for defendant of course takes the contrary view, citing 20 R. C. L. 188 and 189, section 157; Sherman and Redfield on Negligence, Vol. 1, page 442; *Pérez* v. *Guánica Centrale,* 17 P. R. R. 925, and a number of State and Federal cases.

In the *Sweeney Case* the Supreme Court of the United States said:

"The general rule in actions of negligence is that the mere proof of an 'accident' (using the word in the loose and popular sense) does not raise any presumption of negligence; but in the application of this rule, it is recognized that there is a class of cases where the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed, by the party charged with care in the premises, the thing that happened amiss would not have happened. In such cases it is said, *res ipsa loquitur*—the thing speaks for itself; that is to say, if there is nothing to explain or rebut the inference that arises from the way in which the thing happened, it may fairly be found to have been occasioned by negligence."

In *Ridge* v. *Norfolk Southern R. Co.*, L. R. A. 1917 E, 215, the North Carolina Supreme Court refers to the case last above mentioned and to an earlier decision more often cited than any other by the Federal courts in support of the proposition that the doctrine of *res ipsa loquitur* does not apply to an action by an employee against his employer, as follows:

"Some text-writers state that the Supreme Court of the United States does not recognize this doctrine in actions between master and servant, and the case of *Patton* v. *Texas and P. R. Co.*, 179 U. S. 658, 45 L. ed. 361, 21 Sup. Ct. Rep. 275, is cited as authority for this contention. The reference in the opinion to this doctrine is obiter, as will be seen by a careful consideration of the facts in that case. But even if the court did so hold in that case, the reason for depriving a plaintiff of the benefit of the doctrine when the plaintiff happens to be a servant of the defendant no longer exists. Those cases which deny the applicability of the doctrine in an action by a servant against his master proceed upon the theory that the injury may be referred to the negligence of a fellow servant, or to contributory negligence of the plaintiff, with just as much reason as to the negligence of the master. Under the Employers' Liability Act the defense of the fellow-servant doctrine is excluded, as is that of contributory negligence to some extent. Hence the reason for the law, as thus stated, having ceased, the rule ceases.

"In the recent case of *Sweeney* v. *Erving*, 228 U. S. 233, 57 L. ed. 815, 33 Sup. Ct. Rept. 416, Ann. Cas. 1914 D, 905, already cited by us, the doctrine of *res ipsa loquitur* is recognized by the Supreme Court of the United States in an action for damages for personal injuries brought by a patient against a physician in the use of the X-ray, and the question of contributory negligence might become involved in such a case."

*Ridge* v. *Norfolk Southern R. Co.* is the "State case" mentioned in the following extract from the exhaustive note to *Midland Valley* v. *Fulgham*, same volume, page 1, where at page 77 we find that—

"In a Federal case arising under a state Employers' Liability Act, and in a state case arising under the Federal Employers' Lia-

bility Act, the view has been taken that the abrogation by those acts of the fellow servant rule and the rule as to assumption of risk removes the reason for the distinction between the case of a passenger and the case of a servant, and that the Federal doctrine rejecting the rule *res ipsa loquitur* as between master and servant does not apply in a case arising under such acts. And the Federal Supreme Court has recently observed that the application of the doctrine to cases arising under that act is 'disputable', but that it was not necessary to decide the point in that case. It seems not improbable that this view will eventually be accepted by the Federal courts as it affords a means of escaping from a doctrine which not infrequently operates harshly and unjustly against the servant.''

Labatt, after discussing the general rule relied upon by appellee herein, to wit, that negligence is not inferable from the mere occurrence of an accident, at page 4864, No. 1601, vol. 4, of his work on Master and Servant, proceeds thus:

''The principal qualification to which the doctrine discussed in the preceding section is subject is that which arises from the operation of what is succinctly termed the doctrine of *res ipsa loquitur*. The rationale of this doctrine is that, in 'some cases, the very nature of the action may, of itself, and through the presumption it carries, supply the requisite proof.' It is applicable 'where, under the circumstances shown, the accident presumably would not have happened if due care had been exercised.' Its essential import is that, on the facts proved, the plaintiff has made out a prima facie case, without direct proof of negligence.

''Through the operation of the presumption thus entertained the burden of proof is shifted to the defendant and remains upon him until he has produced some evidence which tends to establish his freedom from fault. The burden which is thrown upon him, however, is not that of satisfactorily accounting for the accident, but merely that of showing that he used due care.

''The doctrine does not dispense with the rule that the party who alleges negligence must prove it. It merely determines the mode of proving it, or what shall be prima facie evidence of negligence.

''[In quite a large body of cases, especially from the Federal courts, the language used admits of no other construction than that the court holds that the maxim never applies in a master and serv-

ant case. No satisfactory reason is given why the maxim should not apply in such cases, although its application is somewhat restricted because of the subsidiary rules governing such relationship.]''

And in quite a number of Federal cases the courts have shown a strong disposition to disregard or to qualify the rule suggested in the dictum of the Supreme Court in the *Patton Case.*

In *Farmers' Loan & Trust Co. et al.* v. *Toledo, A. A. & N. M. Railway Co. et al.,* 67 Fed. 73, where ''the death of the engineer and fireman was caused by the derailment and overturning of the engine,'' it was held that ''the fact that the accident occurred by derailment of the train, or, what is perhaps equivalent to a derailment, a sliding and giving way of the entire road-bed, makes a prima facie case of negligence which it is the duty of the receiver to overcome by testimony.''

In *Byers* v. *Carnegie Steel Company,* 159 Fed. 347, the Circuit Court of Appeals, Sixth Circuit, after pointing out that the rule laid down in the *Patton Case* rests upon ''the peculiar contract of the employee by which he assumes the risks incident to his employment, including the negligence of his fellow-servants, and the resulting requirement that the injured employee show that the injury of which he complains was the result of a risk he did not assume,'' adds that ''there is no hard and fast rule that the doctrine of *res ipsa loquitur* can in no case be applicable in a suit by an employee against an employer for negligent injury. On the contrary, the rule referred to has been applied in numerous cases of that nature, the applicability of the rule being determined by the circumstances under which the accident is shown to have happened.'' And a number of state cases are thereupon quoted with approval as illustrative of the proposition last mentioned.

From the opinion in *Lucid* v. *E. I. Du Pont de Nemours Powder Co.,* 199 Fed. 377, we quote the following:

"It is contended that upon the statement of the facts alleged in the complaint a cause of action arises in favor of the plaintiff in error, and a presumption of negligence on the part of the defendant in error, or, in other words, that *res ipsa loquitur.* The doctrine of *res ipsa loquitur* involves an exception to the general rule that negligence must be affirmatively shown, and is not to be inferred, and the doctrine is to be applied only when the nature of the accident itself, not only supports the inference of the defendant's negligence, but excludes all others.

"It is the general rule that in actions by employees against their employers for injuries sustained through negligence, the mere fact of the injury creates no presumption of negligence on the part of the employer, and that the doctrine of *res ipsa loquitur* does not apply. Chicago & N. W. Ry. Co. v. O'Brien, 132 Fed. 593, 67 C. C. A. 421; Northern Pacific Railway Company v. Dixon, 139 Fed. 737, 71 C. C. A. 555; Shandrew v. Chicago, St. P., M. & O. Ry. Co., 142 Fed. 320, 73 C. C. A. 430; Omaha Packing Company v. Sanduski, 155 Fed. 897, 84 C. C. A. 89, 19 L. R. A. (N. S.) 355; Patton v. Illinois Cent. R. Co., (C. C.) 179 Fed. 530; Midland Valley R. Co. v. Fulgham, 181 Fed. 91, 104 C. C. A. 151; Montbriand v. Chicago, St. P., M. & O. Ry. Co. (C. C.) 191 Fed. 988. The reason of the rule is that ordinarily it cannot be known with reasonable certainty that the injury did not result from the negligence of some fellow servant, or that it did not result from a risk of the employment which the employed assumed, including that of the negligence of his fellow servants. In Patton v. Texas & Pacific Railway Company, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, the court said:

" 'Where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half a dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion.'

"But the rule is not inexorable, and there are cases in which the maxim 'res ipsa loquitur' should be held to apply even to actions brought by employés against their employers. Such a case was recognized by the Circuit Court of Appeals of the Sixth Circuit in Byers v. Carnegie Steel Company, 159 Fed. 347, 86 C. C. A. 347, 16 L. R. A. (N. S.) 214, in which it was held that when the character

of an accident, and the circumstances under which it occurred are such as to point strongly to an abnormal and dangerous condition of machinery, and to its long-continued existence under circumstances which indicated that the employer by reasonable care should have known of such condition and that the employé assumed no risk thereof, the relation of employer and employé does not forbid an inference of the employer's negligence from the fact of the accident.

"In Westland v. Gold Coin Mines Co., 101 Fed. 59, 41 C. C. A. 193, the defendant had constructed a stull for the use of its employés in a narrow and dark fissue in a mine, 900 feet beneath the surface of the earth, knowing that it would be weighted at times with tons of earth and rock; but the stull was of insufficient strength or improperly constructed, and gave way, causing the death of plaintiff's intestate. Judge Thayer, in delivering the opinion of the court, said:

" 'The fact that the stull fell demonstrates that it was insufficient to support the load with which it was burdened at the time it fell. The case in hand, then, is not of that kind of which it may be said that the occurrence of the accident affords no evidence of negligence.'

    *       *       *       *       *       *       *

"The substance of the complaint in charging negligence in the present case is that the defendant negligently and carelessly had and kept stored, in the building in which it was engaged in manufacturing dynamite, a great quantity of dynamite and other high explosives, approximately 30,000 pounds. From the very nature of the allegations, the assumption that the negligence may have been the act of a fellow servant is excluded, and it would seem, therefore, that the maxim 'res ipsa loquitur' should apply; for the defense of assumption of risk is one that under the practice in California must be pleaded by the defendant. Magee v. North Pac. C. R. Co., 78 Cal. 430, 21 Pac. 114, 12 Am. St. Rep. 69."

In *American Car & Foundry Company* v. *Schachlewich*, 229 Fed. 559, the penultimate paragraph of the opinion reads as follows:

"The only question involved is whether the court erred in refusing a directed verdict in favor of the defendant, as requested. It is the established law of the courts of the United States that,

to hold a master responsible for injuries to a servant, the servant must show by substantive proof that the master was negligent in the manner alleged in the complaint, and that such negligence was the cause of the injury. The maxim of 'res ipsa loquitur' does not apply where the relationship of master and servant exists. Patton v. Texas and Pacific Railroad Company, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Looney v. Metropolitan Railroad, 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564; American Car and Foundry Company v. Dieta, 121 C. C. A. 593, 203 Fed. 469. In the opinion of the writer of this opinion, all that can be said in favor of this rule is that it has the sanction of age, and the rule of stare decisis does not permit the courts to disregard it. The law-making department of the government alone can change the rule.''

And the Supreme Court of the United States, in *Minn. & St. Louis R. R. Co.* v. *Gotschall,* 244 U. S. 66, holding that in view of the Safety Appliance Act negligence may be inferred from the mere opening of the couplers of a train carrying interstate commerce and resulting in the death of a brakeman, refers to the doctrine of *Patton* v. *Texas & Pacific Ry. Co., supra,* and *Looney* v. *Metropolitan R. R. Co.,* 200 U. S. 480, as a ruling ''to the effect that negligence may not be inferred from the mere happening of an accident except under the most exceptional circumstances.'' This interpretation of the *Patton Case* seems to be somewhat in line with that suggested in the *Lucid* and *Byers Cases,* in the light of the extract embodied in the above quotation from the *Lucid Case,* which is also set forth *verbatim* in the *Byers Case* and is frequently referred to in other decisions.

See also *Standard Oil Company* v. *Brown,* 218 U. S. 78, and cases cited.

But aside from any problematic metamorphosis of the rule in the Federal courts and without regard to the effect, whatever it may be, of the Federal decisions in jurisdictions where the fellow-servant doctrine obtains, they can hardly be regarded as binding upon the courts of this Island where this decadent altho comparatively modern excrescence of the

common law is unknown, and where both the right of action and the liability are of statutory origin. We need not fear the fate of Scotland where the doctrine of common employment "was not so much adopted from England, as thrust upon the Scottish courts by decisions of the House of Lords" with the result that in a jurisdiction "in which the civil law furnishes to a large extent the basis of the jurisprudence administered, a doctrine is now applied which has been repudiated in all other countries in which that system prevails." 5 Labatt, page 6155, No. 1991.

The valuable note to *Midland Valley R. Co.* v. *Fulgham, supra,* after pointing out the need of "caution in accepting the result in a single case as authority for the view that the rule in its strict and distinctive sense never applies between master and servant," proceeds thus:

"If general statements in the opinions alone were to be regarded, the weight of authority would perhaps sustain that view, and as already indicated, there is much authority in its support even when general statements in individual cases are tested by results and by comparison with the other cases in the jurisdiction. Nevertheless, an examination of the whole body of the case law on the subject seems to confirm the conclusion stated in the note in 6 L. R. A. (N. S.) 302, that the relation of master and servant is not necessarily fatal to the application of the rule, though the rule has a much more restricted scope between parties in that relation than between carrier and passenger, at least in cases subject to the principles of substantive law embodied in the fellow servant rule and the rule as to assumption of risk. The statutory abrogation of those rules removes one of the principal supports of the doctrine that the relation of master and servant is necessarily fatal to the rule, and extends the scope of the rule in those jurisdictions committed to the opposite view."

From section 9 of the same note, discussing the application of the rule to establish notice of defect, at page 59 we quote the following:

"At common law, and under many statutes, a master is not

liable for an injury to a servant in consequence of a defect in a place
or appliance unless he knew, or in the exercise of ordinary care ought
to have known, of it, and as a matter of substantive law it is gen-
erally held or assumed that such knowledge is part of the plaintiff's
case, rather than that lack of negligence is an affirmative defense.
This view, however, does not involve a denial of the applicability
of the rule *res ipsa loquitur* to the element of knowledge or notice;
but, on the contrary, creates the occasion and necessity for invoking
the rule on this branch of the case.

"In many cases the difficulty under which the plaintiff labors
is not in making a *prima facie* showing of a defect in the place or
appliance, but in showing that the master knew or ought to have
known of the defect. Indeed, proof that appliance broke while being
used by an employé with proper care for the purpose intended ordi-
narily makes a *prima facie,* if not a conclusive, case so far as the
existence of a defect or unsuitableness of the appliance is concerned.
Upon an hypothesis which includes the proper use of the appliance,
it does not seem necessary to invoke the rule *res ipsa loquitur* in its
distinctive sense to establish the existence of a defect even if the case
is devoid of all other circumstances tending to indicate its exis-
tence   *   *   *   .

"The courts concede that notice, actual or constructive, may be
proved by circumstances; but not infrequently decide against the
servant upon the ground that while the circumstances are sufficient
to establish *prima facie* the existence of a defect in a place, appli-
ance, or instrumentality, there is no evidence, direct or circumstan-
tial, having any tendency to show that the master knew, or in the
exercise of reasonable care would have known, of the defect in time
to have remedied it, without giving due consideration to the question
whether the lack of evidence in that respect may not be cured by
invoking the rule *res ipsa loquitur* in its strict and distinctive sense;
that is, as a rule which from the bare fact of the accident and its
physical cause or causes, without more, indulges a presumption or
permits an inference of negligence, including both elements thereof;
viz., the existence of the defect and the master's knowledge, or op-
portunity to have learned, thereof.

       *       *       *       *       *       *       *

"It is true that, even though experience teaches that defects of
the general character in question can ordinarily be prevented by
the exercise of due care on the part of the master, the circumstances
of the individual case may show that the particular defect in ques-

tion could not have been prevented or discovered by the exercise of such care; or the affirmative evidence as to the care used to prevent or discover defects may conclusively repel any presumption or inference of negligence, and thus prevent the application of the rule. In spite, however, of these possible reasons why *res ipsa loquitur* may not be invoked in a particular case to supply the lack of circumstances tending to indicate that the defect could have been discovered by the exercise of due care on the part of the master, the court ought not to *nonsuit* the plaintiff because of the lack of such circumstances under the impression that evidence, direct or circumstantial, to show notice or the opportunity to know of the defect is a necessary condition of the rule *res ipsa loquitur,* since the lack of such evidence not only does not defeat the rule, but creates the very necessity and occasion for invoking it.''

Turning now to the note to *Fitzgerald* v. *Southern R. Co., supra,* 6 L. R. A. (N. S.) at page 356, we are told that:

''Perhaps the clearest elucidation of the nature and function of the rule *res ipsa loquitur* and its applicability between master and servant is to be found in the opinion in Chenall v. Palmer Brick Co., 117 Ga. 106, 43 S. E. 443, and the opinion upon the subsequent appeal in the same case (119 Ga. 837, 47 S. E. 329). The action in that case was by an employee against the master for the fall of a brick arch which had been constructed by the latter.''

On first appeal in the *Chenall Case* Mr. Justice Lamar, speaking for the court, said:

''There is a disposition to argue that every injury is the result of somebody's negligence, but in many cases the injury is a mere accident or casualty for which, humanly speaking, no one is to blame; in others the person injured is at fault; in some his negligence contributes to the result; in others a fellow-servant was to blame. In all such instances the maxim *res ipsa loquitur* affords little or no assistance to the jury; for even supposing that the injury itself proclaims negligence, it says nothing as to who was negligent, and fixes no basis for determining whether the plaintiff, the defendant, a fellow-servant, or some stranger may not have been at fault. There are other cases where, when it is shown that the defendant owned or controlled the thing which, when properly constructed, maintained, or operated, did not, in the ordinary course of events, so

act as to injure those near by, proof that damage was caused by such thing affords reasonable evidence that the injury was occasioned by want of ordinary care. *Prima facie* that want of due care should be referred to him under whose management and control the instrument of injury was found. The injury (jury?) would not be warranted in reasoning in a strictly logical form: 'buildings do not collapse without negligence; this building collapsed; therefore there was negligence;' for buildings do fall without any one being to blame, and as a result of flood and storm. But, ordinarily, extraordinary and external causes may be treated as the exception, to be established by the defendant. All that the plaintiff should be required to do in the first instance is to show that the defendant owned, operated, and maintained, or controlled and was responsible for the management and maintenance of the thing doing the damage; that the accident was of a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence. When he has shown this, he has cast a burden on the defendant, who may then proceed to show that the accident was occasioned by vis major, or by other causes for which he was not responsible.

"It is rather remarkable that out of the multitude of personal-injury cases decided by this court, in no one has the maxim *res ipsa loquitur* been directly invoked. Yonge v. Kinney, 28 Ga. 111. It is, however, so well founded in reason, and so sustained by authority, that it is not necessary to make elaborate citations. The most apt and concise statement of the principle is found in the leading case of Scott v. London & St. Katherine Docks Co., 3 Hurl. & C. 596, where the plaintiff was injured by the fall of bags of sugar being lowered from defendant's warehouse, and the court held: 'There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the ·defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care.' A case somewhat more directly in point is that of Waterhouse v. Brewing Company, 48 L. R. A. 157 (a), 159, where the building had stood for ten years, and the defendant insisted that that fact contradicted the charge that the building was negligently constructed. The court, however, said, 'From the fact that the building fell of its own weight, without any external violence, a fair presumption would be that the fall occurred through adequate causes, one of the most natural of

which would be the negligent and faulty construction of the building itself.' While the master was not a guarantor, he was yet bound to exercise ordinary care in furnishing the servant a safe place in which to do his work (Preston v. Central R. Co., 84 Ga. 590) and could not escape his obligation by deputing such duty to a fellow-servant. Southern Bauxite Co. v. Fuller, 116 Ga. 695.''

And when the case came up for the second time the Georgia Court, through Mr. Justice Cobb, with equal clearness restated this view of the matter in the following terms:

''When the case was here before, there was a distinct ruling to the effect that the maxim *res ipsa loquitur* would be applicable in an action by a servant against a master. While we are aware that this is a proposition upon which the courts are not by any means agreed, and the older rulings are generally to the contrary, still there are many decisions by American courts holding that, under given circumstances, this maxim is applicable in cases of the character referred to, and the trend of American authority seems to be now in that direction, even if the current is not already that way. See 2 Labatt's Master & Servant, 834, and cit. in note 8. While the maxim is applied with great caution in any class of cases, greater caution must be exercised in determining its application in a suit by a servant against a master, on account of the burden resting upon the servant as well as the presumptions which exist in favor of the master. A servant who sues his master for damages on account of alleged negligence takes upon himself the burden of showing, not only due care on his own part, but also that the master was negligent. Except in a case where the master sued is a railroad company, the servant can not, under any circumstances, call to his aid any presumption of law which will have the effect to relieve him from establishing the existence of negligence by proof of facts requisite for that purpose. On the other hand, the master has in his favor two presumptions of law: first, that he has discharged his full duty to his servant in regard to instrumentalities, place of work, and fellow-servants; and, second, that the servant has assumed all of the usual and ordinary hazards of the business. Before the servant can recover he must overcome, by proof of the facts necessary for that purpose, these two presumptions that the law raises in favor of the master. The servant is required to prove negligence, but he may carry this burden of proof which the law imposes upon him like any

other litigant, and may satisfy the requirements of the law either by direct or circumstantial proof. If he can, by the proof of a series of circumstances, establish that he has exercised due care, and that the master was negligent, he may rely upon the circumstances for a recovery, even in the absence of any direct proof on the subject of his own conduct or that of his master. The maxim *res ipsa loquitur* is simply a rule of evidence. The general rule is that negligence is never presumed from the mere fact of injury, yet the manner of the occurrence of the injury complained of, or the attendant circumstances may sometimes well warrant an inference of negligence. It is sometimes said that it warrants a presumption of negligence; but the presumption referred to is not one of law but of fact. It is, however, more correct and less confusing to refer to it as an inference rather than a presumption; and not an inference which the law draws from the fact, but an inference which the jury are authorized to draw; and not an inference which the jury are compelled to draw. In the trial of an action by a servant against a master, when it has been shown that the servant was in the exercise of due care, and the manner of the injury or the attendant circumstances are such that injury could not have resulted unless the master had been negligent in some respect in which the law required him to be diligent for the servant's safety, then the jury might be authorized to infer that the master had been negligent in respect of the matter which was the basis of the suit, and would be authorized to base a finding upon such an inference, in the absence of an explanation which would be satisfactory to them; and it is not necessary that this explanation should satisfy them as to the cause of the injury, but an explanation which satisfies them simply that the master has exercised all the diligence which the law requires of him would be sufficient to rebut the inference of negligence resulting from the happening of the occurrence, although the cause thereof might still be involved in unsolvable mystery.

    *        *        *        *        *        *        *

"The application of the maxim *res ipsa loquitur* does not change one iota of the law of master and servant, but simply affords, in some rare cases, a means of proof to which the servant may resort to carry the burden which the law imposes upon him in a case where he sues his master for negligence. In these cases, which are of rare occurrence (for the maxim only applies in cases which do not ordinarily and usually happen), the maxim affords to the servant an opportunity to claim at the hands of the jury an inference drawn

from facts which he may rely upon as proof of that which the law
requires him to prove.   The inference is only *prima facie,* is gen-
erally slight, and is easily overcome.''

Coming now to the second phase of the instant case:

''A proposition which has been so frequently enunciated by the
courts as to have become axiomatic is that, *prima facie,* a servant
does not assume any risks which may be obviated by the exercise of
reasonable care on the master's part.   In other words, the abnormal,
unusual, or extraordinary risks which the servant does not assume
as being incidental to the work undertaken by him are those which
would not have existed if the master had fulfilled his contractual
duties.''   3 Labatt, page 2386, No. 894.

''The degree of care required of an employer in protecting his
employees from injury is the adoption of all reasonable means and
precautions to provide for the safety of his servants while in the
performance of their work.   What shall be deemed 'due care' is to
be 'estimated on a consideration of the facts of each particular case.'
It is 'such care as reasonable and prudent men would use under
similar circumstances.'   The care which such a man is, for the pur-
poses of this rule, assumed to exercise, is that which he would exer-
cise for his own safety, if the instrumentality in question was fur-
nished for his own personal use.   That is to say, a master is required
to furnish 'such (appliances) as a prudent man would furnish if
his own life were exposed to the danger that would result from un-
suitable or unsafe appliances.'

''In the case of a corporation the obligation is to use 'such watch-
fulness, caution, and foresight as, under all the circumstances of the
particular service, a corporation controlled by careful, prudent of-
ficers ought to exercise.''   Idem, page 2403, No. 908.

''The well-known definition of negligence by Willes, J., as being
'the absence of care according to circumstances' is applicable to
cases involving injuries to servants.   The degree of care, therefore,
which the master is bound to exercise, is measured by the dangers
to be apprehended or avoided, or, as another case puts it, 'must be
proportionate to the dangerous nature of the means, instruments,
and machinery used,' or, in the words of the Supreme Court of the
United States, the 'master is bound to observe all the care which
prudence and the exigencies of the situation require, in providing
the servant with machinery or other instrumentalities adequately
safe for use by the latter.''   Idem, page 2414, No. 908.

And the rule in civil law jurisdictions is, to say the least, no less favorable to the employee:

"The owners of industrial establishments are bound to provide fully for the safety of the workmen employed by them, and they are responsible, as regards those workmen, for all accidents and injuries which may result either from defects of construction, or from the failure to keep machinery and apparatus in proper condition, or from the negligence or unskillfulness of the employees who superintend the different departments of the business." 5 Labatt, page 6146, No. 1978.

Here the plaintiff, in the performance of his duty as an employee of defendant, was required to pass over and to stand upon a wooden grating furnished and provided by defendant for that purpose and beneath which was machinery in motion. The plaintiff was without fault. Had the grating been in proper condition the injury would not have occurred. Both grating and machinery were exclusively under the ·control of defendant and it was charged with the duty of taking reasonable precautions, proportioned to the danger to be apprehended, to maintain the said grating in proper condition. In the ordinary or usual course of things the injury would not have occurred had that duty been performed. These circumstances point so persuasively to negligence on the part of the defendant that it is not too much to call upon it for an explanation. Of course, if the cause of the injury was one which it could not have foreseen and guarded against, it was not culpable, but in the absence of that or some other explanation there is enough to justify the conclusion that it was culpable.

The foregoing outline of the situation is but a paraphrase, in so far as it does not follow literally, the language used by the Supreme Court of the United States in *San Juan Light Company* v. *Requena*, 224 U. S. 89, where the facts there enumerated were held to justify the application made by our local Federal court of "the doctrine of *res ipsa*

*loquitur,* which is, when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the ·defendant, and the injury is such as in the ordinary course of ·things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care.''

It will suffice to add that the case of *Pérez* v. *Guánica Centrale, supra,* cited by appellee, is not at all in point, as will at once appear from a reading of either of the two opinions delivered therein.

The judgment appealed from must be reversed and the case remanded for further proceedings not inconsistent herewith.

*Reversed and remanded.*

Chief Justice Hernández and Justices Wolf, Del Toro and Aldrey concurred.